**UNITED STATES of America,**
**Plaintiff,**

v.

**William Richard BLANKENSHIP,**
**Defendant.**

**Cr. No. 8052.**

United States District Court
S. D. West Virginia,
Huntington Division.

Dec. 10, 1954.

---

2. Mosheuvel v. District of Columbia, 191 U.S. 247, 24 S.Ct. 57, 48 L.Ed. 170.

See also Lyons v. D. C., 93 U.S.App.D.C. 278, 214 F.2d 203.

Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., and Wm. T. Lively, Asst. U. S. Atty., Charleston, W. Va., for the United States.

Horace S. Meldahl, Charleston, W. Va., for defendant.

WATKINS, District Judge.

The defendant, William Richard Blankenship, was indicted on April 5, 1954, for violation of the Selective Service Act of 1948, as amended, Title 50 U.S.C.A.Appendix, § 462, in failing and refusing to report for civilian work as ordered by the draft board. The case was heard by the court after jury trial was waived. It was submitted upon an agreed statement of facts, the records of the draft board, and a short amount of oral evidence. There is very little, if any, conflict in the material facts. Although no request has been made for same, I make the following findings of fact and conclusions of law:

The defendant registered with Local Board No. 13 at Williamson, W. Va., on October 26, 1949, and thereafter filed his classification questionnaire on February 2, 1951. He there stated that he was a student preparing for the ministry under the direction of Watchtower Bible and Tract Society attending the Theo-

cratic Ministry at Williamson, and that because of his religious training and belief he was conscientiously opposed to participation in war in any form. Pursuant to those representations the board classified him IV–E on March 8, 1951. Subsequently the board changed defendant's classification from IV–E to I–O pursuant to a new regulation for conscientious objectors, the former classification having been discontinued.

On January 10, 1952, Blankenship appeared personally before the local board, at which time he was asked if he knew of any classification other than I–O to which he should belong. He stated that he should belong to IV–E, which was for conscientious objectors. When informed that such classification had been discontinued, no other classification was specified by Blankenship. After such personal appearance, his classification was reviewed by the local board and he was continued in 1–O.

The defendant was ordered to report for physical examination and on November 25, 1952, he was mailed Defense Department Form No. 62 entitled "Certificate of Acceptability", which notified him that he had been found fully acceptable for induction into the armed forces. He was asked to select three types of work of national importance, in order of preference, which he was qualified to do. Subsequently, upon learning that he would have to perform civilian work of national importance under Title 50 U.S.C.A.Appendix, § 456(j), defendant informed the board that he had not known that the 1–O classification would interfere with his duty of the ministry by compelling such work. Thereupon, defendant asserted for the first time that he was entitled to a ministerial classification. Prior to the time that he passed his physical examination and was found acceptable for service, the Selective Service file shows that he had informed the board that he was a steel worker employed by Republic Steel Corporation at Youngstown, O., working five days per week. At the time he asserted the right to a ministerial classi-

fication he also requested a personal appearance before the board, which was denied, but was later granted after he appealed to the state appeal board.

On March 3, 1953, the state appeal board classified defendant as 1–O, after the local board had been requested by him to forward his file to the state appeal board for consideration. On March 12, 1953, he submitted a special report for Class 1–O registrants to the local board. Again he refused to list any work except that of "minister". In that form under the heading "Important Civil Work Experience", he showed that he was still employed by Republic Steel with a final pay of approximately $65 per week.

On April 16, 1953, defendant again had a personal appearance before the local board with a representative of the State Selective Service Headquarters present. At that hearing he asked the local board to permit him to continue his job with Youngstown Steel Company, stating that such employment would permit him to continue his religious work and studies while being employed there. (See the summary of such meeting in the Selective Service file.)

Again on June 18, 1953, he requested and was given a personal appearance, and the summary of that appearance, marked "Defendant's Exhibit 12" in the Selective Service file, shows that Blankenship admitted that he was a full-time employee of Republic Steel, working five days per week; that he contended that all Jehovah's Witnesses were ministers even though they presided over no church; that he had charge of no particular group of communicants; that he received no direction as to the type of work he did after work hours at the steel mill; that he had received no certificate from the church giving him the right to officiate at marriages and funerals; and that he received no compensation from the church for any work done. Following this hearing the local board again reviewed his file and continued him in 1–O and denied his request for a IV–D ministerial classification. At

defendant's request his file was again forwarded to the state appeal board for their consideration, and on July 17, 1953, he was retained in class 1–O by the state appeal board. Defendant was then ordered to report for civilian work, pursuant to Title 50 U.S.C.A.Appendix, § 456(j), which order required him to report to that board on December 7, 1953. Defendant failed and refused to report to the local board as ordered, and was indicted for failing to so report, on April 5, 1954.

The record shows that on October 8, 1952, defendant filed a supplementary information sheet with the local board in which he stated that he was "still contributing my time to ministry schools and work amounting to around 25 hours per month". A paper signed by John L. Rankine, a representative of the Watchtower Bible and Tract Society, stated that defendant spent about 35 to 40 hours per month in such work, not to mention the preaching done by him in the local congregation.

Tony Dercoli, another member of Jehovah Witnesses, in a letter filed with the local board on June 18, 1953, stated that the defendant spends a "good number of hours weekly" in religious work. There is evidence by the defendant and other Jehovah Witnesses to the effect that in his spare time, defendant prepared Bible lectures, participated in world wide Bible Education, made house to house calls, attended church services and preached with others in the congregation and studied to prepare for the ministry. The record in all the hearings before the local board and defendant's testimony at the trial show that he worked at least 40 hours *per week* as a steel worker, five days per week, eight hours per day.

Upon this record the local board found that he was not a minister within the meaning of the Selective Service Act. His classification and his requests for personal appearance were reviewed a total of twelve times by the local board and the state appeal board, and there was never a dissenting vote of either of the two boards when his request for a hearing or his classification was considered. On the witness stand at his trial he testified that the board never denied him an opportunity to present any evidence to support his claim.

At the beginning of his trial, defendant urged (1), that the order to report was invalid because work at Weston State Hospital was not work of national importance and (2), that there was not sufficient evidence in the file to support a finding that he was not a minister of religion. The first defense was waived by defendant when he testified at the trial that he would not have served in any capacity under the Selective Service Act because he would not be his own boss, and to make himself so available would be to break his covenant with God. Counsel for defendant then informed the court that the defendant relied "solely and exclusively on his right to a ministerial classification" (Tr. p. 20), and upon that issue the case was tried.

The provisions of the Selective Service Act of 1948, relative to this issue, Title 50 U.S.C.A.Appendix, § 466, provides as follows:

"§ 466. *Definitions.*

\* \* \* \* \* \*

"(g)(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and

teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

■■ The present act also provides that the decisions of the local board "shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." Title 50 U.S. C.A.Appendix, § 460(b)(3). The United States Supreme Court, dealing with a similar provision of the prior act, in the case of Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567, said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Again in 1947, the United States Supreme Court, on the question of the right of judicial review, citing the Estep case with approval, in the case of Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59, said:

"Although we held in Estep that Congress did not intend to cut off all judicial review of a selective service order, petitioners have full protection by having the issue submitted to the trial judge and the reviewing courts to determine whether there was any substantial basis for the classification order. When the judge determines that there was a basis in fact to support classification, the issue need not and should not be submitted to the jury. Perhaps a court or jury would reach a different result from the evidence but as the determination of classification is for selective service, its order is reviewable 'only if there is no basis in fact for the classification.' Estep v. United States, supra, 327 U.S. page 122, 66 S.Ct. page 427, 90 L.Ed. 567."

■■ Applying this law to the facts of this case, there was ample evidence before the local board to support its finding that defendant was not entitled to a ministerial classification. According to the information furnished the board by the defendant he is a steel worker forty hours a week or approximately 160 hours a month, while he devotes only twenty-five to forty hours a month to religious work and studies. Where it appears that the registrant spends only a small portion of his time in religious activities, this fact alone is sufficient for the board to deny a minister's classification. Cox v. United States, 332 U.S. 442, 451, 68 S.Ct. 115, 92 L.Ed. 59. Thus the board could very reasonably conclude that the defendant's vocation was a steel worker, and that even though the defendant was a duly ordained minister in accordance with his religious

sect or organization, he did not regularly, as a vocation, teach and preach the principles of religion; that it was not his customary vocation as required to qualify for such classification under Title 50 U.S.C.A.Appendix, § 466. The burden is on the claimant to prove himself to be within the group entitled to the classification. United States v. Simmons, 7 Cir., 213 F.2d 901, 903. Counsel for the defendant relies heavily upon the case of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152. In this case the principal and decisive issue before the Supreme Court was whether there was a basis in fact for denying Dickinson's claim as to ministerial exemption under the statute involved in the present case. It appears that Dickinson, a Jehovah's Witness, originally claimed a IV–D or ministerial classification in 1948, shortly after he registered under the Selective Service Act. At that time he stated in his questionnaire that he was a regular, but not an ordained minister, and was working forty hours a week as a radio repairman. From other documents submitted to the board, it appeared that he devoted an uncertain number of hours a week leading two Bible study groups and several hours each week to preaching to the public. The board classified him I–A in July, 1950. In the spring of 1949 Dickinson left his forty hour a week job as radio repairman and was ordained as a minister. He began working as a full-time pioneer minister, devoting 150 hours each month to religious work, conducting three or four meetings each week at a public hall. He also instructed prospective ministers. He lived on $35 a month, earned by a weekly average of five hours of radio repair work. Despite this change in Dickinson's activities, the board continued him in I–A. Dickinson refused to submit to induction. The Supreme Court, in reversing his conviction, 346 U.S. at page 394, 74 S.Ct. at page 156, of the opinion, said:

"The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' * * * Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. * * * Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrants 'vocation.' And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption."

This case is clearly distinguishable on the facts from the case at hand. In the Dickinson case, the defendant worked only five hours per week as a radio repairman. In the instant case, Blankenship admitted throughout the entire case that he was employed full time, five eight-hour days a week, or at least 160 hours per month. At no place in the record does it appear that he devoted more than forty hours a month to religious work. According to his own statement he spends twenty-five hours a month in religious work and studies.

When we apply the law laid down by the Supreme Court in the Dickinson case, the case upon which the defendant relies for acquittal, to the present facts, we see that the defendant has failed to sustain his contention. Indeed, the defendant's own proof shows that his religious work is performed only part time, occasionally, and not even half time. The record discloses that the defendant has fallen far short of making a prima facie showing that he should be so classified. In the case of Martin v. United States, 4 Cir., 190 F.2d 775, 777, certiorari denied, 342 U.S. 872, 72 S.Ct.

115, 96 L.Ed. 656, the court adopted, in part, the following quotation from Rase v. United States, 6 Cir., 129 F.2d 204, 209:

> " 'If we understand the appellant's argument, every member of his sect is a minister of religion and so entitled to exemption. No differentiation is to be recognized between shepherd and flock or between pastor and congregants. Followed to its logical conclusion, this would mean that all of the members of any religious group which imposes upon its adherents an obligation to teach and preach its beliefs or to make converts, are exempted under the Selective Service Act without regard to whether such activity constitutes their sole or principal vocation. It is inconceivable that it was the intention of the Congress to incorporate in the Act an exemption so broad and all-embracing. The statutory exemption must be applied in consonance with the clearly apparent purpose of the Congress, and not in response to the interpretation placed upon it by particular religious groups or their adherents.' "

The case is exactly in point with the present situation. There the defendant was employed as a laborer, working forty hours a week. His claim to a ministerial classification was based upon the fact that he was a Jehovah's Witness and had been appointed by officials of the sect as a full time minister or pioneer, and as such distributed literature and visited homes when not on duty at his job with the railroad, and had held a few public meetings. The court in affirming his conviction for refusal to be inducted, 190 F.2d at page 777, said:

> "Since all members of Jehovah's Witnesses claim to be ministers of religion, the duty devolves upon the draft board of deciding whether one claiming exemption on that ground is in reality a minister of religion within the meaning of the Selective Service Act; and we cannot say that there is no reasonable basis for

the action of the board in refusing such classification here. The courts are given no power of review over the draft boards. If there is a substantial basis for the order, it must be sustained. Cox v. United States, 332 U.S. 442, 448–452, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567. * * *

> "The contention, pressed here with much fervor, that appellant must be accorded the status of a minister of religion because so designated by the religious sect of which he is a member, was met and answered in Cox v. United States, supra, Swaczyk v. United States, 1 Cir., 156 F.2d 17, and Rase v. United States, 6 Cir., 129 F.2d 204, 209. Nothing need be added to what was said by Judge Simons in the case last cited, as follows: 'The phrase "minister of religion" as used in the Act is to be interpreted according to the intention of the Congress, and not by the meaning attached to it by the members of any particular group. Congress undoubtedly intended to exempt such persons as stand in the same relationship to the religious organizations of which they are members, as do regularly ordained ministers of older and better known religious denominations. This is borne out by the provision for the exempting of theological or divinity students. * * *' "

In view of the circumstances and the related law, it cannot be said that the action of the board, in denying the defendant a ministerial classification, was so arbitrary and capricious that the order was void and of no effect. There was basis in fact for the board's classification.

In his brief the defendant argues that he need not obey the board's order because the board denied him the right of a personal appearance until ordered by the appeal board to allow one. It was within the discretion of the board to decide whether the new evidence sub-

mitted was of sufficient weight to require a reopening of the case. Smith v. United States, 4 Cir., 157 F.2d 176, 181; Cramer v. France, 9 Cir., 148 F.2d 801; United States ex rel. La Charity v. Commanding Officer, etc., 2 Cir., 142 F.2d 381. It cannot be said under the circumstances that the discretion was arbitrarily exercised, as it appears from the record that the new evidence consisted of additional affidavits which were largely cumulative. Smith v. United States, supra. Furthermore the record discloses that the defendant was subsequently granted two personal appearances at which the evidence was received, and the defendant stated on the witness stand that he was never denied any opportunity to present evidence to sustain his claim.

In his brief the defendant also says that he was denied a fair hearing because the board's summaries of his personal appearances were not proper summaries and, therefore, the appeal board did not have all the evidence before it for consideration. However, when asked to point out the errors in the summaries the only thing he could point out was that the board had summarized that he worked "five or more days per week at the mill", whereas he had said that he "merely worked five days". The correct evidence appears on other written information furnished by him which was in the file for the appeal board to review. There need be no summary of the oral information if the same evidence appears in extenso in writing in defendant's complete file which was reviewed by appeal board. Niznik v. United States, 6 Cir., 173 F.2d 328, 333.

In his brief the defendant urges for the first time that the case should be dismissed because he says that certain appeal procedures were violated, in that the appeal board did not transmit the file to the Department of Justice for an advisory recommendation as he contends that Title 32 F.R. Section 1626.25 provides. In support of this contention the defendant cites the case of Sterrett v. United States (Triff v. United States),

9 Cir., 216 F.2d 659. A perusal of the case will show that it does not sustain this contention. That case involved a prior regulation which the Court of Appeals construed as requiring such advisory recommendation, but the court noted that the section had been amended June 18, 1952 (17 F.R. 5449). Such amended section now reads:

"(2) If the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and by virtue thereof to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces, and the local board has classified the registrant in Class I–O, the appeal board shall proceed with the classification of the registrant. If, in such a case, the local board has classified the registrant in any class other than Class I–O, the appeal board shall transmit the entire file to the United States Attorney for the Federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice."

This regulation above quoted became effective on June 18, 1952, and was in force and effect when William Richard Blankenship first appealed his case from Local Board No. 13 at Williamson, West Virginia, on February 6, 1953, to the state appeal board.

In the Sterrett and Triff case the court noted that the prior regulation was amended so as to provide expressly that the hearing by the Department of Justice should be called for only where "the local board has classified the registrant in any class other than I–O."

The amended section is very clear and unambiguous and is in conformity with Title 50 U.S.C.A.Appendix, § 456(j), wherein it is provided that if the local board has classified the registrant in any class other than Class I–O, the appeal board shall transmit the entire file to the United States Attorney for the

Federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice. It clearly says, in Section 456(j), that if conscientious objector claims are sustained by the local board, then the registrant is to be inducted into the armed forces and assigned to noncombatant service or assigned to civilian work if conscientiously opposed to participation in such noncombatant service. Defendant has not been deprived of any procedural rights within the opinion of the Ninth Circuit Court of Appeals in the Sterrett and Triff case because the regulation has been amended and because the local board here granted him a I–O classification, which classification was affirmed by the appeal board. Therefore the case can be distinguished on both the facts and the law.

Defendant's motion for acquittal is denied. I find the defendant guilty as charged.