**UNITED STATES of America,**
**Plaintiff,**

v.

**Rolla Melvin MONTEE, Defendant.**

**No. 55–CR–54.**

United States District Court
E. D. Wisconsin.

Feb. 1, 1956.

Edward G. Minor, U. S. Atty., by Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

James R. Mattison, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

The indictment charges defendant with a violation of the Universal Military Training and Service Act of 1948, 50 U.S.C.A.Appendix, § 451 et seq., in that he failed to carry out a directive given under said Act. More specifically, the defendant is charged with failing to remain at his employment as a civilian worker contributing to the maintenance of the national health, safety or interest

for a period of twenty-four consecutive months. The defendant waived a jury and trial was had before the court.

On October 30, 1951, the local board, No. 60 of Racine County, Wisconsin, received a selective service classification questionnaire of the defendant. In that questionnaire Montee claimed to be a minister of Jehovah's Witnesses. He also stated that he was working an average of fifty hours per week assembling electric motors. He also filled out Series XIV as a conscientious objector. On November 7, 1951, Montee was classified 1–A. Subsequently Montee filled out the conscientious objector form and was re-classified to 1–O on December 6, 1951. No appeal was taken from that classification.

On March 11, 1953, defendant was found physically acceptable. In April of 1953 Montee filled out the special report for Class 1–O registrants, and on April 20th Montee executed Form SSS No. 151, Application of Volunteer for Civilian Work. The application read as follows:

"I hereby volunteer for civilian work contributing to the maintenance of the national health, safety or interest and request that I be ordered to perform this work under the provisions of the Universal Military Training and Service Act, as amended, and the rules and regulations prescribed thereunder. For this purpose, I waive all rights of personal appearance and appeal if I am classified as available for such civilian work, and I consent to my being ordered to perform this work at any time convenient to the Government."

On June 10, 1953, the defendant received an Order to Report for Civilian Work and was assigned to the Waukesha County Dairy Herd Improvement Association. He reported for work at the designated agency but in December of 1953 he requested a transfer to the Racine County Hospital for financial reasons. He mentions no dissatisfaction with his draft status at that time. The Draft Board granted Montee's request on December 11, 1953. Montee addressed no further correspondence to his Draft Board until after a letter of August 4, 1954, from the Racine County Hospitals and Home that Montee had left their employ.

September 11, 1954, Montee corresponded with his local board stating that he had severed his employment as a civilian worker, that "My reasons for this action is, that in gaining a further knowledge of the scriptures, I can see that is (sic) is against the standards set forth in the Bible * * *."

A review of the information in Montee's selective service file reveals that Montee at the time at which he registered was working an average of fifty hours a week. He was classified on November 7, 1951, as 1–A and shortly thereafter mailed Form 110, the form for conscientious objector. That form discloses four jobs from 1948 until the time the form was filled out. None of them were noted as part-time jobs. A letter of November 21, 1951, was submitted by Alfred Schnabl. No claim was made therein that Montee was a full-time minister. On December 6, 1951, Montee was re-classified to 1–O. No appeal was taken from that classification. The defendant made no effort whatsoever to furnish his Draft Board with new facts which might justify a change in his status nor were other documents submitted by other interested persons. No attempt was made by him for re-classification. From all that appears from the selective service file, he cooperated fully with the Draft Board. He signed Form 151, Application of Volunteer for Civilian Work. No testimony adduced at his trial would indicate that he did not realize what he was doing when he signed the application or that he did so under duress. The Draft Board had no indication that Montee was in any way dissatisfied with his draft status until Montee elected to cease his employment as a civilian worker. His letter of September 11, 1954, informing the Draft Board of his severance of

employment and his reasons therefor makes no claim to a ministerial classification.

The defendant had ample opportunity to make any views which he held known to the Draft Board. However, from December 6, 1951, until September 11, 1954, a period of over two and a half years, Montee made absolutely no representations to his Draft Board regarding his classification. Instead he chose to summarily sever his employment at the Racine County Hospitals and Home without making any effort to obtain a release from his Draft Board.

Defendant claims that he was prejudiced and his rights denied because of the failure of the Draft Board to post the names of advisors as set forth in the regulations.

Such claim was before this court in United States v. Dorn, D.C., 121 F.Supp. 171, 178. In his opinion in that case Chief Judge Tehan stated as follows:

> "But not every procedural error will render a proceeding vulnerable in a collateral attack. A registrant must show that the proceeding was so unfair as to deprive it of vitality. [Citation.] The defendant has not at any time claimed that he did not know of his right to appeal. He was in fact advised of his right to appeal in the notice of classification form which was sent to him on two separate occasions following classification by the Board."

The foregoing is applicable in the situation of this defendant. Judge Tehan's decision has been followed in United States v. Sutter, D.C., 127 F.Supp. 109, and United States v. Manns, D.C., 135 F.Supp. 624, where Judge Hoffman has gone into the problem very thoroughly. There are cases indicating a contrary view, but it is the feeling of the court that those cases are distinguishable on the facts. Here the defendant was familiar with his right to appeal and made no effort to contact any appeal agent. Indeed, he executed and filed Form SSS No. 151, being an Application of Volunteer for Civilian Work.

 The evidence contained in the selective service file presents no basis on which to find that Montee was prejudiced by the failure of the Draft Board to post a list of advisors. Montee's objection to performing civilian work in lieu of induction was in no way evidenced until after he had actually begun his work.

The Draft Board certainly had sound basis in fact for its classification of 1–O. Nothing in the file in his case or in the testimony would indicate that due process has been in any way violated.

It is the finding, verdict and judgment of the Court that the defendant, Rolla Melvin Montee, is guilty as charged in the indictment. The Court hereby directs the Probation Department to make a pre-sentence investigation.