Nick John **KALINE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 14635.

United States Court of Appeals Ninth Circuit.

June 11, 1956.

· J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Cecil Hicks, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellant, Nick John Kaline, was charged with and convicted of refusal to be inducted into the Armed Forces of the United States in violation of the Universal Military Training and Service Act, Title 50 U.S.C.A. Appendix, § 462(a).[1] Appellant had registered with the Local Board on September 8, 1948, giving his age as 22. At that time he checked on his registration card in reply to the question "Were you ever rejected for service in the Armed Forces?" the answer "Yes" and wrote in "1945". He also indicated on the card that he was a student at Pacific Bible College.

On December 13, 1948, appellant returned his Classification Questionnaire which showed he was a student at Pacific Bible College preparing for the ministry under direction of Pilgrim Holiness Church. He did not fill in the portion of the questionnaire which treated the subject of conscientious objection. Had he done so in such a manner as to request a Special Form for the use of conscientious objectors, doubtless the form would have been furnished to him. Appellant further checked the printed answer, "No" in answering a question as to whether he had any physical or mental condition, which in his opinion would disqualify him from service in the Armed Forces. He apparently had checked "Yes" and then scratched it out and then checked "No".

On January 4, 1948, a letter had been received by the Local Board, from the Records Section of the Selective Service System, showing that the reason for the 1945 rejection was "valvular heart disease". On January 4, 1949, the Local Board asked appellant to send to them a letter from Pacific Bible College pertaining to his student status. A letter from

---

1. June 24, 1948, c. 625, Tit. I, § 12, 62 Stat. 622.

the college confirming his student status was received by the Local Board on February 7, 1949. No physical examination was made of appellant at this time.

On February 17, 1949 appellant was classified IV–F and was notified of that classification. No appeal from that classification was taken. On August 15, 1951, the Local Board was notified that appellant was no longer enrolled at Pacific Bible College. He had apparently ceased attendance there in January, 1951, but had not notified the Local Board of that fact. At this date he was 24 years of age.

Appellant, on December 18, 1951, was classified I–A by the Local Board, and on December 27, 1951, was mailed an "Order to Report for Armed Forces Physical Examination". Two days later, the Board received a letter from appellant asserting that in 1944 he had made out papers as a conscientious objector and presently requested appropriate forms to claim that status. The forms were sent to appellant and returned by him, and on March 1, 1952, the Local Board classified him I–O.[2]

In August of 1952 he had a second physical and was found physically fit. He was then mailed an "Application of Volunteer for Civilian Work" and an enclosing letter from the Local Board. No reply to this letter or form was received from appellant and on November 20, 1952, he was reclassified I–A. Appellant complained of this classification and, after a personal appearance before the Local Board, was classified I–A–O.[3] At this hearing appellant disclosed that he

was employed at a machine shop doing defense work for the Armed Forces.

Appellant appealed from this I–A–O classification to the Appeal Board, and his file was forwarded to that Board on January 21, 1953. On September 18, 1953, the Appeal Board asked for and received, on September 23, appellant's latest address. This information was transmitted by the Appeal Board to the Department of Justice where the case had been referred for investigation and hearing.[4] A letter was mailed to appellant on January 21, 1954, stating that a hearing before a Hearing Officer of the Department of Justice had been set for February 4, 1954. Appellant failed to appear at the hearing and the next day the Hearing Officer returned appellant's file to the Department of Justice with notice of appellant's failure to appear. The Department of Justice on February 10, 1954, asked the Local Board for the latest address of appellant. The Local Board on February 12, 1954, replied that appellant's latest address was the one earlier supplied to the Department of Justice.

On February 16, 1954, appellant notified the Local Board of a change of address, and the Local Board transmitted this change of address to the Appeal Board on February 17, 1954. Appellant, on March 1, 1954, wrote the Hearing Officer, who had sent him the previous notice of hearing, and requested a new hearing date. The Hearing Officer wrote appellant that he would get in touch with the Attorney General and see what was the procedure that he should take in his

---

**2.** Class I–O: "Conscientious Objector opposed to both combatant and noncombatant training and service." Regulations, Selective Service System, Title 32, Section 1622.14 of C.F.R. (1951 Ed.), issued under section 10, 62 Stat. 618, as amended, 50 U.S.C.A.Appendix, § 460. Contained in E.O. 10292, 16 F.R. 9862, Sept. 28, 1951.

**3.** Class I–A–O: "Conscientious Objector available for non-combatant military service only." Regulations, Selective Service System, Title 32 C.F.R. § 1622.11(a)

(1951 Ed.), issued under section 10, 62 Stat. 618 as amended, 50 U.S.C.A.Appendix, § 460. Contained in E.O. 10292, 16 F.R. 9862, Sept. 28, 1951.

**4.** In accordance with Section 6(j) of the Universal Military Training and Service Act, 62 Stat. 604, 613, 50 U.S.C.A.Appendix, § 456(j); June 24, 1948, c. 625, Title I, § 6, 62 Stat. 609; Sept. 27, 1950, c. 1059, § 1(6), 64 Stat. 1074; June 19, 1951, c. 144, Title I, § 1(1–q), 65 Stat. 83.

case. The Hearing Officer wrote the Department of Justice that same day, stating what the problem was and asked advice as to what the rules were in such a situation. The Department of Justice replied on March 12, 1954, to the Hearing Officer, stating that after appellant's file had been received from the Hearing Officer, and after appellant's non-appearance at the previously scheduled hearings, the Department had contacted the Local Board in an effort to determine the registrant's latest address and had been told that his address was the same as previously given to them. The Department of Justice asserted that, due to appellant's failure to keep his Local Board advised of his latest address, there was no obligation upon the Department to grant him another hearing, and, in fact, his case had already been processed in their office and the Department's recommendation to the Appeal Board was forthcoming.

The Department of Justice, on March 15, 1954, wrote the Hearing Officer informing him that appellant's file was being sent to the Appeal Board with the recommendation that the claim be sustained as to combatant military service only. The Hearing Officer wrote appellant on March 16, 1954, advising him that his file had already been processed and it was not possible to arrange for another hearing.

On April 15, 1954, appellant was classified I–A–O by the Appeal Board, and on May 12, 1954, it mailed an "Order to Report for Induction", ordering him to report on May 26, 1954. Appellant reported on the date specified to the induction station but refused to be inducted into the Armed Forces, and signed a written statement to that effect which was witnessed. Appellant was prosecuted, convicted, and sentenced to the custody of the Attorney General for imprisonment for a period of four years.

■ At the trial, and here, appellant argues that he was denied due process in that the Local Board failed to have available Advisors to Registrants, and to have conspicuously posted the names and addresses of such advisors to registrants, as required by the regulations,[5] and to the appellant's prejudice. Appellee admits that there was no one with the technical name "Advisor to Registrants" appointed, and that no names of such advisors were posted in the Local Board Office.[6] In Uffelman v. United States, 9 Cir., 1956, 230 F.2d 297, this court held, and we think correctly, that the mere failure to appoint such advisors or the failure to post the names and addresses of such advisors is not *per se* a violation of due process. That lack of due process, on this account, exists only when prejudice is shown.[7] Appellant argues here that he

5. Section 1604.41 of Title 32 C.F.R. (1951 Ed.) reads: "Appointments and Duties. Advisors to registrant *shall* [Emphasis added] be appointed by the Director of Selective Service upon the recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. Every person so appointed should be at least 30 years of age. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office." Issued under section 10, 62 Stat. 618, as amended, 50 U.S.C. Appendix, § 460; contained in E.O. 9979, 13 F.R. 4188, July 22, 1948. Redesignated at 14 F.R. 5021, Aug. 13, 1949.

See Uffelman v. United States, 9 Cir., 1956, 230 F.2d 297, 301, wherein this court stated: "In the Revision of Title 32 covering regulations published on or before December 31, 1954, 'effective as to facts arising on and after January 1, 1955,' and therefore not applicable here, the mandatory word 'shall' in the first line has been changed to the permissive 'may'."

6. At the trial, a Selective Service official testified that where there are other persons who take the place of advisors, they do not have the technical name "Selective Service Advisor" and thus, under the regulation, it is not necessary that their names and addresses be posted.

7. See Rowton v. United States, 6 Cir., 1956, 229 F.2d 421, certiorari denied 76 S.Ct. 788; United States v. Montee, D.C. 1956, 137 F.Supp. 381; United States v.

was prejudiced because if there had been an advisor's name and address posted, he could have gone to him and been informed that he could inspect his file and there would have discovered that the Appeal Board was trying to get him a new date and, with the advice of the Advisor, could have pushed the matter to success.

■ We do not agree with this speculative and theoretical showing of prejudice, and for several reasons. If appellant had done what the regulations required and kept his local board informed of his current address, he would have known of the hearing before the Hearing Officer. Additionally, if appellant had not delayed in requesting a new hearing until March 1, 1954, almost a month after the previously scheduled hearing, he may have secured the second hearing. Appellant, at the trial, admitted that it was his "negligence" and his "fault" that he did not get the notice of the hearing before the Hearing Officer. Appellant also testified that he never at any time made a request of the Local Board for assistance or advice, but rather he consulted his minister. It cannot be assumed that, had he inquired of the Local Board, he would have been refused inspection of his file. Appellant further did not show that he ever checked the bulletin board for such list of advisors or ever made a visit to the Local Board office during this period. We find no merit in the contention that he was prejudiced.

■ Appellant here for the first time attempts to show that there was no proof that he had been warned of the penalty for refusal to submit to induction and thereafter given the opportunity to "step forward". This issue was not raised in the trial court and likewise was not included in appellant's Points on Appeal, as required by the rules of this court.[8] If appellant wished to raise this point, he should have done so in the trial court.

However, we have made an exhaustive search of the record and find that there is not one scintilla of evidence which would point to the failure of the government to allow appellant to take the one "step forward". The presumption is that the legal steps were taken and if appellant wanted to overcome this presumption, he should have made the point at the trial. Appellant, at the induction station, signed (in his own handwriting) the statement dated May 26, 1954 (the date he was to be inducted): "I refuse to be inducted into the Armed Forces of the United States." This statement was witnessed by the Captain and Master Sergeant in charge.

The facts of the instant case are distinguishable from those in Chernekoff v. United States, 9 Cir., 1955, 219 F.2d 721.

■ Next, appellant argues that due process was not met because no copy of the Hearing Officer's report was ever placed in appellant's file nor sent to him. Again, we point out that this issue was not raised at the trial nor included in appellant's Points on Appeal.

Again, we have looked into the matter in order to clarify the interpretation appellant maintains as to the holding in Gonzales v. United States, 1955, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467. The Gonzales case dealt with the failure to send a copy of the Justice Department's recommendation to the registrant so that he could file a reply thereto with the Appeal Board. Nothing is said in the opinion about any requirement that a copy of the Hearing Officer's report to the Department of Justice be given to the registrant. We add that, since appellant did not appear at the hearing before the Hearing Officer, it is impossible to see how he could have been in any event prejudiced because the Hearing Officer made no recommendation or comment but merely returned the file to the Justice

Wenner, D.C.1955, 134 F.Supp. 447. Cf. Chernekoff v. United States, 9 Cir., 1955, 219 F.2d 721, 724, wherein by dicta this court said we had "serious doubt as to the validity of such a practice". In the instant case, appellant overstates our

holding in the Chernekoff case, as we expressed only "doubt" as to the validity, that was not a "holding" of invalidity.

8. See Rule 17(6), Rules of the U. S. Court of Appeals for the Ninth Circuit.

Department and noted the non-appearance of the appellant.

Appellant next argues that no copy of the Justice Department's recommendation was placed in the file until after the Appeal Board's decision. Again, this was not raised at the trial, nor included in appellant's Points on Appeal. It is not the holding in Gonzales v. United States, supra, that the recommendation had to be placed in appellant's file at any particular time, but it is held in that case that a copy of the *recommendation* of the Department be furnished the registrant at the time it is forwarded to the Appeal Board and that he be afforded an opportunity to reply. Appellant here does not allege that he did not get a copy of such recommendation but apparently wants us to infer that fact from his allegation that the recommendation was not placed in the file until after the Appeal Board's decision. Furthermore, we note that the recommendation was made on March 15, 1954, and received by the Appeal Board on March 18, 1954. The decision of the Appeal Board was handed down on April 15, 1954. It is therefore apparent that the Appeal Board had the recommendation before it.

Next, appellant argues that the report of the Hearing Officer and the recommendation of the Department of Justice are not supported by the findings of fact, and are based on artificial considerations. Appellant's argument is to the effect that the Department of Justice and the other Selective Service officials should not be concerned with the kind of work that a registrant did or was willing to do. Since the Hearing Officer made no recommendation but merely returned the file to the Department of Justice we need not further consider the report.

Appellant in 1952 appeared before the Local Board and stated that he was employed at Com-Air Products, a machine shop doing defense work. The Federal Bureau of Investigation report showed that appellant was employed by A. O. Smith Corporation since April, 1953, as a turret lathe operator. The F. B. I. report stated that A. O. Smith Corporation was working on material on a subcontract for the Air Force and Navy and that appellant was aware of it. We do not feel that the above facts are irrelevant and unworthy of consideration. This court has previously so held in White v. United States, 9 Cir., 1954, 215 F.2d 782, 786, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755, in commenting upon a similar situation:

"In view of his experiencing no difficulty working upon the manufacture of munitions for war, the board was not without justification in concluding that White had no conscientious objection to participation in war through the manufacture of arms and munitions, just so long as he did so for a private company and not for the government. It was therefore but natural for the boards to believe that if the registrant's conscience was not bothered while working on war contracts he could not justly claim he was conscientiously opposed to noncombatant participation in war activities * * *. The registrant's facility in forwarding the cause of war, force and killing through activity in a war plant, may well demonstrate his failure to establish his status as a person conscientiously opposed to noncombatant duty."

The Supreme Court, in Witmer v. United States, 1955, 348 U.S. 375, 381, 75 S. Ct. 392, 396, 99 L.Ed. 428, said:

"In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. * * * [A]ny fact which casts doubt on the veracity of the registrant is relevant."

Appellant further argues that the Hearing Officer should have given him a second hearing, and it was an abuse of discretion not to do so. He argues that where a registrant promptly points out to the Hearing Officer that he received

his mail late, then fairness requires that a new hearing be granted. Even assuming this to be true, we do not place appellant in such a position. Here, appellant by his own admission was at fault in not notifying the Board of his change of address. Appellant further was not prompt in requesting a new hearing, even if his own testimony is believed. The notice of the hearing was sent to him January 21, 1954, eleven days before the hearing date of February 4. He testified that his sister didn't call him and notify him of the hearing until "two or three days later". This, then, would be February 6th or 7th. He notified the Local Board of his change of address on the 16th, almost ten days later. He did not request a new hearing until March 1, 1954. It cannot be said that appellant acted promptly; on the contrary, appellant seems not to have taken his duties to his country in time of its peril with a great degree of seriousness. Additionally we note that even if we believe appellant's statement that he did not get notice of the hearing until "two or three days later" (February 6th or 7th), that if he had then notified the Local Board, the Board would have been able to inform the Department of Justice in their letter of February 12, 1954, as to appellant's new address.

■ Next appellant alleges that the trial court was in error when it quashed the *subpoena duces tecum* as to the Federal Bureau of Investigation report on his case. Appellant argues that at least the trial judge should have made an *in camera* inspection in order to see if a fair résumé of the F. B. I. report had been sent to the appellant. We disagree. Appellant was given a résumé of the report as required under the holding of United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, and Simmons v. United States, 1955, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453. Our decision in White v. United States, 9 Cir., 1954, 215 F.2d 782, supra, and the Fourth

Circuit's decision in Campbell v. United States, 4 Cir., 1955, 221 F.2d 454, 460, are dispositive of the point. In the Campbell case it was said:

"It is argued that the F. B. I. report should be produced so that the court can determine whether or not the hearing officer has furnished the accused a fair summary thereof, but, if the courts may not correct errors of the draft boards, whether of law or of fact, they certainly may not require production of evidence to show the mere possibility of such error by reason of possibility of error on the part of the hearing officer, who can do no more than recommend action in any event."

■ Next appellant alleges that his liability for service was illegally extended beyond the age of twenty-six because his original IV–F classification was void and had no basis-in-fact, and that he should have been classified IV–D (ministry student) because it was evident on his registration card and questionnaire that he was a student studying for the ministry. He argues that if he had been so classified (IV–D) it *might* well be that he would have remained so qualified until after his twenty-sixth birth date and thus not within that class whose liability would be extended up to their thirty-fifth birthday under § 456(h) of Title 50 U.S. C.A. Appendix.[9]

Appellant's liability was not illegally extended. We cannot indulge in the speculation as to what *might* have happened had he remained in IV–D until after his twenty-sixth birthday. Appellant here discontinued his course of study for the ministry in January, 1951, when he was twenty-four years of age. He did not notify the Local Board of such change of status, and the Board did not learn of such change until the college wrote to it on the college's own initiative in August, 1951. He remained in classification IV–F until December, 1951. Even if we assume that he should have been original-

9. June 24, 1948, c. 625, Title I, § 6, 62 Stat. 609; Sept. 27, 1950, c. 1059, § 1(6), 64 Stat. 1074; June 19, 1951, c. 144, Title I, § 1 (1–q), 65 Stat. 83.

ly classified IV–D, this fact does not mean that he was prejudiced. When he ceased studying for the ministry he was then eligible for reclassification, as he had not reached the age of twenty-six. In fact, he was so classified between the time that he ceased his studies at the age of twenty-four, and at the time that he was twenty-six years of age. What he would have done, or might have done in different circumstances, we cannot consider.

Furthermore, appellant here did not object to his IV–F classification, but remained in that classification for some three years. It is settled that a registrant is not entitled to a judicial review of any classification from which he did not appeal. Williams v. United States, 9 Cir., 1953, 203 F.2d 85; Rowland v. United States, 9 Cir., 1953, 207 F.2d 621. At the trial, appellant argued that a IV–F classification is unappealable. The regulations [10] do not support this position. The regulations provide that a registrant can appeal any classification except that he cannot appeal from the determination of the registrant's physical or mental condition. We take this to mean only that a registrant cannot appeal from a *finding* as to his physical or mental condition.

The controlling fact here is that the trial court, upon sufficient evidence, correctly found that the Local Board classified appellant IV–F. The Board had appellant's registration card on which he stated he had been rejected in 1945 from the Armed Forces. The Board also had a form from the Selective Service which confirmed such rejection because of "valvular heart disease". This, we believe, was a sufficient basis-in-fact to support the IV–F classification.

In Talcott v. Reed, 9 Cir., 1954, 217 F.2d 360, 364, in dealing with a similar situation, this court stated:

"The contention cannot be sustained as to the first petition because there was some evidence on the face of petitioner's returned questionnaire upon which the board could reasonably have placed petitioner in the deferred class. To the printed question in the questionnaire as to whether, in his opinion, he had any mental or physical disqualification, he answered, 'No.' He later added, 'I was discharged from Naval Reserve Training Corps because of a punctured ear drum. Later examination showed no such condition.' And again later he explained, 'As stated in Series XV, I feel that the condition of my ear drum should be clearly established.' It would, perhaps, have been advisable for the board to have complied with this suggestion, but that they did not do so does not vitiate the evidence tending to establish the punctured ear drum. The evidence constituted a basis-in-fact. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152 [98 L.Ed. 132], and Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59. * * * "

In our instant case, at the hearing before this court, the appellant made the argument that a registrant's liability for service is only extended to age 35 when the registrant is in a deferred class *at the time* he reaches age twenty-six, and the fact that he may have been previously in a deferred class is not controlling.

Section 6 of the Act, § 456(h) of Title 50 U.S.C.A. Appendix,[11] in dealing with the deferments of various persons, provides:

" * * * *provided further,* that persons who are or may be deferred under the provisions of this section

---

10. Title 32 C.F.R. § 1626.2(a) (1954 Ed.), issued under section 10, 62 Stat. 618, as amended, 50 U.S.C.Appendix § 460. Contained in E.O. 9988, 13 F.R. 4874, Aug. 21, 1948, as amended by E.O. 10232, 16 F.R. 3435, Apr. 20, 1951.

11. June 24, 1948, c. 625, Title I, § 6, 62 Stat. 609; Sept. 27, 1950, c. 1059, § 1(6), 64 Stat. 1074; June 19, 1951, c. 144, Title I, § 1(1–q), 65 Stat. 83.

shall remain liable for training and service in the Armed Forces or for training in the National Security Training Corps under the provisions of section 4(a) of this Act * * * until the thirty-fifth anniversary of the date of their birth."

This quoted section was added to the Universal Military Training Service Act and became effective June 19, 1951. Prior to this amendment all registrants, with some exceptions, when they became twenty-six years of age were placed in class V–A (registrant over the age of liability for military service).

The Selective Service System, after the adoption of Section 6, 50 U.S.C.A. Appendix § 456(h), promulgated a revised Regulation § 1622.50 of C.F.R. (1951 Ed.),[12] which provided:

"Registrant Over the Age of Liability for Military Service. (a) In class V–A shall be placed every registrant who has attained the twenty-sixth anniversary of the day of his birth except * * * (4) those registrants who on June 19, 1951, or at any time thereafter, were deferred under the provisions of section 6 of Title I of the Universal Military Training and Service Act, as amended. * * *."

On the basis of this regulation the Selective Service System extended the liability of a registrant to age 35 if *at any time* on or after June 19, 1951, he was in a deferred class. Appellant here was in a deferred class on June 19, 1951, but was not in a deferred class when he reached age twenty-six.

Appellant argues that this regulation, as it is applied, is in conflict with the statute and that the statute controls, and a registrant must be in a deferred class at age twenty-six to have his liability extended to age thirty-five. For authority for this argument appellant cites House Report 271, reporting the proposed legislation later enacted into law as the 1951 Amendment to the Universal Military

Training and Service Act, containing a section-by-section analysis, including the following:

"* * * Likewise, it should be observed that the new section [456 (h) 50 U.S.C.A. Appendix] permits the induction of persons now or hereafter deferred until the thirty-fifth anniversary of their birth should their basis for deferment terminate after passing their twenty-sixth birthday. This will prevent persons now deferred from escaping induction by continuing their education past the twenty-sixth anniversary of their birth, or by continuing to remain engaged in an essential industry or occupation until they pass their twenty-sixth birthday * * *." U.S.Code Congressional & Administrative Service, 82nd Congress, First Session, 1951, Vol. 2, p. 1500.

This extension of time provision, § 456(h) 50 U.S.C.A. Appendix, was proposed by the House of Representatives and later included in the final Universal Military Training and Service Act of 1951, passed by House and Senate. In order to ascertain the *intent* of Congress in passing this provision, we have made an exhaustive search of the Congressional Record containing the debates on the 1951 Amendment to the Universal Military Training and Service Act. We find the following comment:

Congressman Cole: "* * * During the deliberations in the drafting of the bill with respect to the deferment of individuals within the 18½ to 26 age bracket who might be deferred for agriculture or college or one thing or another, the committee amended section 6 of the present Draft Act to provide that every individual who may be deferred would be liable for service up to the age of 35, so that no college student or other deferred person would escape his liability for service

---

12. Issued under section 10, 62 Stat. 618, as amended, 50 U.S.C.A.Appendix, § 460.

Contained in E.O. 10292, 16 F.R. 9862, Sept. 28, 1951.

because of his deferment. If he is under 35, he is still subject to the draft." (April 10, 1951. Page 3602 Congressional Record—House Vol. 97, Part 3, 82nd Congress, 1st Session)

Also, at page 3681 of the same volume, is found:

Congressman Durham: "I think the gentleman has failed to point out this fact, that a man has four years of service once he graduates from Annapolis or West Point; also, under this measure and the amendment we adopted yesterday offered by the gentleman from New York [Congressman Cole], if a man is deferred for physics, chemistry, or some other subject, and he continues his college education for 4 years, he is still subject to service under this measure of 26 months or whatever number of months we adopt in its final form up to age of 35 years."

Congressman Hinshaw: "Yes, I agree with the gentleman entirely. The fact of deferment to obtain this education, the benefits of which the country needs so badly in large quantity, does not mean that he escapes service. It is quite possible that the service he may have to perform after he graduates will be a good deal worse than the service that is being performed now in Korea by so many of our boys. No one can foretell the future, and anyone deferred under this provision is liable for service until he is 35, not until he is 26, as in the case of the enlisted draftee under this bill."

Nowhere is there a limitation as to the time period of the deferment mentioned in the comments by the Congressman. When speaking of a four-year college education, Congressman Durham did not say that the four-year period had to carry the student past his twenty-sixth birthday. If a student is deferred at eighteen, for example, and graduates when he is twenty-two, under the language of the Congressman the student has had his liability extended to age thirty-five. We note that Congressman Cole, above quoted, was a member of the House Committee that originally drafted the provision.

The Conference Report of the managers on the part of the House at the conference on the disagreeing votes of the two Houses, states:

"18. *Continued liability for induction of persons now or hereafter deferred.* Person now or hereafter deferred from induction will remain liable for induction into the Armed Forces or the National Security Training Corps until they attain the age of 35. This language was contained in the House amendment and was accepted by the Senate managers. There was no comparable language in the Senate bill." U.S.Code Congressional & Administrative Service, 82nd Congress, First Session, 1951, Vol. 2, p. 1513.

Nothing is said in this Conference Report as to any qualifying situation that the amendment was designed to cover.

Senator Russell, Chairman of the Committee on Armed Services, in commenting before the Senate on the Universal Military Training and Service Act Conference Report, said:

" * * * There was an issue on the continued liability for induction of persons who had been deferred from service or training. The provision in the House Substitute provided that an individual who had been deferred for occupational reasons should retain his liability for service until he attained the age of 35 years. The Senate bill contained no such provision, but it appeared to us that the House amendment was obviously reasonable in principle, and therefore, it was adopted by the conferees." (Page 5991 Congressional Record, Vol. 97, Part 5, May 31, 1951.)

Although Senator Russell mentioned "occupational" deferments, we think that he was talking about the application of the amendment to all deferments. Again, in

his remarks there is no indication that it was intended to apply only to those that were in a deferred category at the time of their twenty-sixth birthday.

We think that the House Report was merely intended to cover *one* situation, and did not limit the statutory language of the amendment. The House Report likewise was only a preliminary report and does not control a later report.

We hold that since appellant in the instant case was, on June 19, 1951, in a deferred class that his liability was extended to age thirty-five, notwithstanding the fact that he was not in a deferred class on his twenty-sixth birthday.

The judgment is affirmed.