UNITED STATES of America
v.
Nathan Tony JONES.

Crim. No. 3031.

United States District Court
M. D. Georgia,
Albany Division.

Jan. 25, 1967.

Floyd M. Buford, U. S. Atty., and Tyrus R. Atkinson, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff.

Victor V. Blackwell, Covington, La., for defendant.

## OPINION AND JUDGMENT

ELLIOTT, District Judge.

In this case it is charged:

"That on or about May 23, 1966, within the Albany Division of the Middle District of Georgia, NATHAN TONY JONES wilfully and knowingly did fail and neglect to perform a duty required of him under and in the execution of the Universal Military Training and Service Act and the rules, regulations, and directions duly made pursuant thereto, in that he did fail and neglect to comply with an order of his Local Selective Service Board; that is, to report for the purpose of receiving instructions to proceed to a Civilian Work Assignment; all in violation of 50 App. USC 462."

Upon entry of the Defendant's plea of not guilty the Defendant waived his right to trial by jury and requested the Court sitting without a jury to determine all factual and legal issues presented. The Defendant was joined in this request by the prosecution. Pursuant to this re-

quest the Court proceeded to hear the evidence in the case and had the benefit of oral argument by counsel, which oral argument was later supplemented by written briefs. The Court now files this opinion in conformity with the requirements of Rule 23 of the Federal Rules of Criminal Procedure.

The Defendant, as a registrant of Local Board No. 48 in Albany, Georgia, filed his original Selective Service Classification Questionnaire on December 16, 1963. He was then 19 years of age. In the questionnaire he claimed to be both a conscientious objector and a minister of the Jehovah's Witnesses sect. He showed that he had become a member of this religious group in 1954 and that he was a student preparing for the ministry under the direction of the Watchtower Bible and Tract Society. In a detailed statement which was made a part of the Defendant's completed questionnaire he showed that he spent from three to five hours each week going from house to house "proclaiming the good news" and that, in addition, he regularly attended Bible study meetings conducted by his congregation. He further claimed that for one hour each week he personally presided over a Bible study. On the basis of this information he contended that he should be classified as a minister of religion (Class IV–D), however, in Series V of the Classification Questionnaire the Defendant listed his occupation as "apprentice electrician", showing that he worked an average of 40 hours per week in this secular employment. On February 25, 1964 he submitted a completed conscientious objector form, by which he claimed conscientious opposition by reason of religious training and belief to both combatant and non-combatant training and service in the Armed Forces.

On March 9, 1964 the Local Board classified the Defendant in Class I–A and notified him of that board action on that date. In a letter received by the Local Board on March 23, 1964 he requested a personal appearance for the purpose of discussing his classification, and in a separate letter submitted on the same date he stated that he wished to appeal his I–A classification. He appeared personally before the Local Board on May 15, 1964, at which time he reiterated the claim which he had previously made that he should be placed in Class IV–D. The file shows that the Local Board explained to him that in order to be classified in Class IV–D he would have to be a full time minister or a recognized ministerial student.

The Selective Service file of the Defendant was referred to the Appeal Board, which tentatively determined that on the basis of the record before it he was not entitled to be classified in Class I–O or in a lower classification. Accordingly, pursuant to Section 6(j) of the Universal Military Training and Service Act, the file was referred to the Department of Justice for inquiry and advisory recommendation. While the Defendant's file was before the Appeal Board awaiting the recommendation of the Department of Justice the Local Board received a letter from him dated February 20, 1965 in which he stated that beginning March 1, 1965 he would be devoting full time to the ministry, and with that letter he submitted evidence that he had been appointed to serve as a "Vacation Pioneer" for the period from March 1 to May 31, 1965. "Vacation Pioneers" are members of the sect who are on the "Pioneer" list of the sect temporarily. It is an arrangement whereby persons can engage in the "pioneer" ministry for short periods, such as, when one is on vacation, or when one is free for a short period and can engage in the ministry. This designation is distinguished from the "Regular Pioneers" of the sect who are permanently on the ministerial list. Stated otherwise, a person is placed in the Vacation Pioneer Service because it is only temporary.

On July 13, 1965 the Department of Justice recommended to the Appeal Board that the Defendant be classified in Class I–O (Conscientious Objector) and pursuant to pertinent regulations, the Defendant was, on July 16, 1965, furnished a copy of the recommendation of the Department of Justice and was given 30

days within which to file a reply thereto. No reply having been received from the Defendant, the Appeal Board by unanimous vote on September 17, 1965 did classify the Defendant in Class I–O and he was notified of this action in appropriate manner on October 12, 1965. In a letter received by the Board on October 20, 1965 the Defendant expressed his dissatisfaction with the classification given to him and he submitted for consideration a certificate from the Watchtower Bible and Tract Society showing that he had served a congregation of Jehovah's Witnesses since May 11, 1965 as an Accounts Servant and Book Study Conductor.

On December 14, 1965 the Defendant was physically examined and found acceptable for service and notified of his acceptability on December 20, 1965. Subsequent to this determination of his acceptability by Armed Forces physical examination, he was processed for civilian work in lieu of induction, pursuant to the applicable provisions of the Selective Service Regulations.

On January 6, 1966 the Defendant was furnished a Special Report for Class I–O Registrants with which he could submit to his Local Board three types of approved civilian work which he felt qualified to do and which he could offer to perform in lieu of induction into the Armed Forces. On January 12, 1966 he returned this form offering only to work for the Watchtower Bible and Tract Society of New York, Inc., obviously intending by this offer to continue to perform the type of service he was then performing as a member of Jehovah's Witnesses. By letter dated January 25, 1966 the Defendant's Local Board requested the Defendant to furnish information as to whether he was currently devoting 100 hours or more to the ministry each month and he was requested to have the Watchtower Bible and Tract Society submit a statement certifying to his status. By letter received February 7, 1966 the Defendant informed the Local Board that he was no longer serving as a "Vacation Pioneer" and in a Current Information Questionnaire which he submitted on the same date he listed his then present occupation as "electrician".

Pursuant to Selective Service Regulations, the Local Board by letter dated February 25, 1966 tendered to the Defendant three types of civilian work available and deemed appropriate for him to perform in lieu of induction, and by letter received by the Board from the Defendant on March 7, 1966, the Defendant rejected the work tendered.

Pursuant to other pertinent Selective Service Regulations a meeting was scheduled with the Defendant and the Local Board members and a representative of the State Director, and such meeting was conducted on March 25, 1966. It was not possible to reach any agreement with the Defendant as to any civilian work he would willingly perform and the Local Board then determined that work in the Maintenance Department of the Delaware State Hospital, New Castle, Delaware, was appropriate for him to perform in lieu of induction, and by letter dated April 6, 1966 the Director of Selective Service was requested to approve the issuance of a work order. The Director did so approve in a letter dated May 3, 1966. Pursuant to this approval an order to report for civilian work was issued by the Defendant's Local Board on May 11, 1966 ordering him to report at a specified time and place on the 23rd day of May, 1966 for the purpose of receiving instructions to proceed to the Delaware State Hospital, New Castle, Delaware, where he had been assigned to perform 24 consecutive months of civilian work in lieu of induction into the Armed Forces. The Defendant did not report as ordered. In accordance with the requirements of pertinent Selective Service Regulations, his file was forwarded to National Headquarters of the Selective Service System for review and recommendation as to whether he should be reported to the United States Attorney for prosecution as a wilful violator of the Universal Military Training and Service Act, as amended. Following a review, the General Counsel on behalf

of the Director of Selective Service, by letter dated June 20, 1966, informed the Georgia State Director that it had been determined that this Defendant should be reported for prosecution. He was so reported and has been so prosecuted.

In support of his motion for a judgment of acquittal the Defendant contends (1) that there was no basis in fact for the denial of a ministerial classification, as requested by the Defendant, and that the denial by the Board was based upon an erroneous understanding of the law and regulations, and (2) that the Local Board violated the Selective Service Regulations in failing to notify the Defendant by letter of the denial of his request that his classification be reopened on the basis of requests contained in letters dated February 20, 1965, October 10, 1965, and April 27, 1966, and that this action on the part of the Board was arbitrary and violative of due process and that the Defendant was prejudiced because of this.

Congress provided in Section 10(b) (3) of the Selective Service Act that the decisions of the local Selective Service Boards shall be final except in certain situations. How far a court should go in reviewing the final determination of the Selective Service System, including the determination by the Appeal Boards, has clearly been limited by the Supreme Court of the United States in Estep v. United States, and its companion case, Smith v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Justice Douglas, in his opinion at page 122, 66 S.Ct. at page 427, said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached

only *if there is no basis in fact for the classification which it gave the registrant.*" (Emphasis supplied.)

The Supreme Court has on a number of occasions reiterated the stand which it took in the *Estep* case, notable among these instances being the decision of the Court in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. In the latter case the Court repeated the language of the opinion in the *Estep* case and explained what the Court meant by a "basis in fact" in the following language:

"At the outset it is important to underline an elemental feature of this case. The Universal Military Training and Service Act does not permit direct judicial review of selective service classification orders. Rather the Act provides, as did the 1917 and 1940 conscription Acts before it, that classification orders by selective service authorities shall be 'final'. However, in Estep v. United States, 327 U.S. 114 [66 S.Ct. 423, 427, 90 L.Ed. '567] (1946), a case arising under the 1940 Act, this Court said, at 122–123: 'The provision making the decisions of the local boards "final" means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant.' "

The Court also stated in that decision:

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the court will not inter-

fere. *Nor will the courts apply a test of 'substantial evidence.'* " (Emphasis supplied.)

In the case of Swaczyk v. United States (1 Cir.), 156 F.2d 17, certiorari denied 329 U.S. 726, 67 S.Ct. 77, 91 L.Ed. 629, it was stated:

" 'It should be remembered that immunity from military service arises not as a matter of constitutional grant, but by virtue of Congressional deference to conscientious religious views. Rase v. United States, 6 Cir., 129 F.2d 204. The burden, therefore, is not upon the government, but upon one claiming exemption to bring himself clearly within the excepted class.' Seele v. United States, 8 Cir., 133 F.2d 1015, at page 1022.

"Unless, then, the registrant can establish the complete lack of a factual basis for his classification, or, perhaps, some controlling bias or prejudice against him, his defense is ineffectual * * *.

" * * * Was there any basis in fact for the denial of ministerial exemption to this registrant?

"In answering this question, we do not believe that any single standard, fact or circumstance is controlling. Rather, it is a matter to be judged from a view of the record as a whole."

In a recent pronouncement, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, the Court stated:

"With due regard for the policy of Congress, which was to make review within the Selective Service System final in all cases where there was conflicting evidence or where two inferences could be drawn from the same testimony, we cannot hold that petitioner was wrongfully denied the conscientious objector classification. In short, there was basis in fact for the Board's decision."

The United States Court of Appeals for the Fifth Circuit in the case of Tamarkin v. United States, 260 F.2d 436, certiorari denied 359 U.S. 925, 79 S.Ct. 607, 3 L.Ed. 2d 628, said:

"As to the first question raised on appeal, the Supreme Court has defined the scope of the Court's review of the draft board's classification determinations. The Court said: 'It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 1953, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132. The classification can be overturned only if it has "no basis in fact." Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567.' Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 395, 99 L.Ed. 428."

Having reminded ourselves of the foregoing fundamentals, we approach the question whether it can be said in this case that the determination by the Local Board that the Defendant was not entitled to the ministerial exemption *is without any basis in fact.*

Section 6(g) of the Universal Military Training and Service Act, as amended (50 U.S.C. App. § 456), exempts from training and service persons who are regular or duly ordained ministers of religion. These terms are defined in Section 16(g) of the Act as follows:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in

the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

A study of the history of the Act makes it clear that the above quoted definitions were included in the current Act because of the difficulty which had been experienced under the 1940 Act in determining who should be considered as being a "minister of religion". Senate Report No. 1268, 80th Congress, 2d Session, dated May 12, 1948, contains the following statement at page 13:

"(g) Deferment of ministers and ministerial students.—Regular or duly ordained ministers of religion, and certain theological and pretheological students, are exempt from induction but not registration. This subsection parallels the 1940 Act, except as regards pretheological students, who were not covered in the original statute. Serious difficulties arose in the administration and enforcement of the 1940 Act because of the claims by members of one particular faith that all of its members were ministers of religion. A minority of the Supreme Court thought that

Congress intended to grant an exemption broad enough to include this group. (See the dissenting opinions in Cox v. United States, 332 U.S. 442, 455, 457 [68 S.Ct. 115, 92 L.Ed. 59].) In order that there may be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the leaders of the various religious faiths and not for the members generally, the terms 'regular or duly ordained ministers of religion' have been defined in section 16(g). The definition is that which was contained in the 1917 Selective Service Regulations and which was successfully administered without the problems which arose under the 1940 Act."

The case of Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, which had been decided under the 1940 Act and referred to in the Senate Report, involved three registrants, all members of the Jehovah's Witnesses sect. The first registrant, Cox, had information in his Selective Service file showing that he was enrolled in the "Pioneer Service" and averaged 150 hours a month in religious activities outside of secular work. However, the Court concluded that the Board was justified in deciding from the available facts that Cox had not established his ministerial status. It is noted that there was a strong dissent in the Cox case, however, the view of the majority of the Supreme Court was given subsequent approval in the above quoted legislative history of the current 1948 Act.

Another of the registrants involved in the Cox case was named Thompson. Thompson stated in his questionnaire that he had operated a grocery store for a number of years and had been a minister and a Book Study Conductor and an Advertising Servant. He attached an affidavit from a representative of his religious sect to the effect that he had devoted more than 500 hours to "field service" representing time spent in going from house to house, etc., but not including time spent in conducting studies at the local "Kingdom Hall". He presented another affidavit from a repre-

sentative of the sect stating that he was an ordained minister of the Gospel and that he was a "School Instructor in a Course in Theocratic Ministry". Thompson also attached three certificates from the National Headquarters of the Watchtower Bible and Tract Society which stated that he had been associated with the Society for a certain period and that he had served as Assistant Company Servant and Theocratic Ministry Instructor, and also as Advertising Servant and Book Study Conductor. He also filed a statement signed by 12 Witnesses who stated that they regarded Thompson as an ordained minister of the Gospel. No evidence was submitted indicating any change in Thompson's activities in operating his grocery store. The Supreme Court affirmed the conviction of Thompson.

Another registrant in the *Cox* case was a man by the name of Roisum who stated that he was a Book Study Conductor. He also stated that he preached the Gospel of the Kingdom at every opportunity and he enclosed as a part of his file a letter from the National Headquarters of the Watchtower Bible and Tract Society stating that he had been affiliated with the Society for a number of years and "was appointed direct representative of this organization to perform missionary and evangelistic service in organizing and establishing churches and generally preaching the Gospel of the Kingdom of God in definitely assigned territory" and that he devoted his entire time to missionary work and was a duly ordained minister. The Local Board classified Roisum as a conscientious objector and Roisum appealed, insisting that he was entitled to the ministerial exemption. He submitted a further affidavit from a representative of his sect stating that Roisum was an Assistant Company Servant, a Back-Call Servant, a Book Study Conductor, and that by virtue of the performance of these duties he was acting as a regular minister of the Gospel. His file showed that his secular occupation was that of farming. The Supreme Court also affirmed the conviction of Roisum.

If under the 1940 Act persons who held various positions in the Jehovah's Witnesses sect as were held by Cox, Thompson and Roisum could be classified other than in the classification provided for ministers with the concurrence and approval of the Supreme Court, it seems that they also may be similarly classified under the current Act, and this would appear to be particularly true in view of the legislative history explaining the definition of ministers which is contained in the current Act.

In Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132, the Supreme Court outlined the criteria by which the courts were to judge a given factual situation when it said:

"The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' S. Rep. No. 1268, 80th Cong., 2nd Sess. 13. Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. Cf. Cox v. United States, 332 U.S. 442 [68 S.Ct. 115, 92 L.Ed. 59] (1947). On the other hand, a legitimate minister cannot be, for the purposes of the Act, unfrocked simply because all the members of his sect base an exemption claim on the dogma of its faith. That would leave a congregation without a cleric. Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation'. And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing the right to the exemption."

■ Obviously, no person can be classified as a minister merely because of some title which he holds in the sect of which he is a member. Regardless of title each person claiming the ministerial exemption must be measured against the rigid requirements which Congress provided in Section 16(g) of the Act, and as the Supreme Court said in the *Dickinson* case, supra, "since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption". And if the registrant does not bear that burden the classifying boards of the Selective Service System cannot classify the registrant as a minister.

■ Reviewing the evidence as to ministerial status which was submitted by the Defendant in this case, the Court is convinced that when measured against the evidence submitted by Cox, Thompson and Roisum, the Defendants in the *Cox* case, the evidence in this case is even less convincing as to entitlement to the ministerial status. In the *Cox* case the Supreme Court held that there was a "basis in fact" for the denial of the ministerial classification and we are led to also conclude in this case that there was a "basis in fact" for the classification of this defendant by the Local Board in the manner in which he was classified.

This conclusion which we reach is also in line with a number of decisions of the Court of Appeals for the Fifth Circuit. In Neal v. United States (5 Cir.), 203 F.2d 111, certiorari denied 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1402, the Court upheld the denial of a ministerial status to a "Pioneer" who at the time he was classified performed approximately 20 hours of secular work a week and was devoting about 300 hours a month to religious activities, and in Smith v. United States (5 Cir.), 238 F.2d 79, that Court found that a defendant who held the title of Assistant Company Servant of the local congregation and also the title of Book Study Conductor had not been deprived of a substantial right when the Local Board did not reopen his classifi-

cation to consider a claim of ministerial status when he was gainfully employed 50 hours a week at the time he filed his questionnaire, and from 40 to 45 hours a week until the time of trial. See also Harris v. Ross (5 Cir.), 146 F.2d 355, and Wells v. United States (5 Cir.), 158 F.2d 932, certiorari denied 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1276.

Our conclusion that there was a "basis in fact" for the classification of this Defendant is also in line with the decisions of the Courts of Appeal in other circuits. Typically, Bradshaw v. United States (10 Cir.), 242 F.2d 180; Capehart v. United States (4 Cir.), 237 F.2d 388; United States v. Diercks (7 Cir.), 223 F.2d 12.

Counsel for the Defendant in the case before us calls our attention to the decision of the United States Court of Appeals for the Fifth Circuit in Wiggins v. United States, 261 F.2d 113 (1958), and urges upon us the view that the decision in the *Wiggins* case would be authority for holding that the Local Board in this case had no basis in fact for denying this Defendant the ministerial classification. If defense counsel's interpretation of the meaning of the *Wiggins* decision is correct it then must be presumed that the Court of Appeals for the Fifth Circuit intended to deliberately hold contrary to the decision of the Supreme Court in the *Cox* case, and the views of the Supreme Court as expressed in the *Dickinson* case, and the intention of Congress as set out in the Senate Report heretofore noted and the decisions of other Circuit Courts of Appeal. We do not indulge such a presumption, but rather conclude that the decision in the *Wiggins* case indicates only that the Court was of the opinion that the position held by Wiggins when coupled with his extensive religious activities, was sufficient to make him a leader in that particular congregation, the effect of the decision being limited to the particular facts which were before the Court.

■■ We now come to the question whether the failure of the Local Board to grant the Defendant another personal

appearance and to reopen the Defendant's classification on the basis of his letters dated February 20, 1965, October 10, 1965, and April 27, 1966, was arbitrary and a denial of due process. The Defendant was afforded the opportunity to appear personally before his Local Board and he did so appear on May 15, 1964. After this personal appearance the Defendant's case was considered by the Appeal Board and he was classified I–O by unanimous vote. This classification was final in the absence of new and material evidence warranting reopening the file and consideration anew by the Local Board. Under the pertinent Selective Service Regulations (Section 1624.1) a registrant has a procedural right to a personal appearance before his Local Board provided he files a written request therefor within 10 days after the Local Board has mailed a notice of classification to him. This 10-day period may not be extended. It is noted that the three letters referred to by the Defendant's counsel were not filed with the Local Board within 10 days following the Board's classification action. The letter dated October 10, 1965 expressed dissatisfaction with the classification action by the Appeal Board from which no further right of appeal nor right of personal appearance accrued. The certificate filed with his letter was simply cumulative in that it merely reiterated evidence of activity as a Jehovah's Witness and was not evidence of any appointment to a full time ministry. The letter dated February 20, 1965 merely informed the Local Board that the Defendant would be devoting full time to the ministry beginning March 1, 1965, but a few days later there was submitted evidence of appointment as a "Vacation Pioneer". We have heretofore noted the temporary nature of a Vacation Pioneer appointment. The letter dated April 27, 1966 merely requested that the Vacation Pioneer appointment letter be filed in his Selective Service file. This letter was in no sense a written request to reopen nor was the letter dated February 20, 1965 such a request. As we understand it, the customary procedure followed by Local Boards is that the Local Board reopens a case and reclassifies a registrant when the registrant submits evidence of changed circumstances and submits a written request for reopening of his classification, but a mere notice of a change in his status cannot be viewed as a request to reopen. A number of cases support this view. See Campbell v. United States (4 Cir.), 221 F.2d 454; United States v. Mohammed (7 Cir.), 288 F.2d 236, certiorari denied 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26.

We do not consider the contention by the Defendant that he was prejudiced by the failure of the Local Board to notify him by letter of its determination not to reopen his case as having any merit for reason that the file clearly shows that the Defendant knew his status with his Local Board at all times during the period of processing for civilian work in lieu of induction, from January to May, 1966. We observe that it is contended that if he had received a letter from the Local Board informing him that a determination not to reopen had been made he could have written to the State Director and then possibly to the National Director asking for a review of his file, but the file clearly shows that by operation of the regulations themselves a review of the Defendant's file was conducted on two different occasions, and it is because the Director of Selective Service reviewed the file and recommended prosecution that the case is now before us. In any event, if there was a failure to follow the strict procedural requirements of the regulations, such failure should not be considered a denial of due process unless the Defendant has been prejudiced thereby. See Rowton v. United States (6 Cir.), 229 F.2d 421, certiorari denied 351 U.S. 930, 76 S.Ct. 788, 100 L.Ed. 1460; Pate v. United States (5 Cir.), 243 F.2d 99; Uffelman v. United States (9 Cir.), 230 F.2d 297; United States v. Manns (7 Cir.), 232 F.2d 709; United States v. Mekolichick (3 Cir.), 234 F.2d 71, certiorari denied 352

952

U.S. 908, 77 S.Ct. 147, 1 L.Ed.2d 117; Kaline v. United States (9 Cir.), 235 F. 2d 54.

Accordingly, upon a review of the facts of this case and a consideration of the law applicable thereto, the Court denies the motion for judgment of acquittal and adjudges the Defendant to be guilty as charged.