**UNITED STATES of America**

v.

**Carl Wilson STEINHART.**

**Cr. No. 12557.**

United States District Court,
M. D. Pennsylvania.
March 25, 1955.

Stephen A. Teller, Asst. U. S. Atty., Wilkes-Barre, Pa., for plaintiff.

Harry E. Smith, Scranton, Pa., for defendant.

WATSON, Chief Judge.

The defendant, Carl Wilson Steinhart, was indicted for refusing to report to his local board to receive instructions to proceed to the place of his civilian work as ordered by his draft board in violation of Section 462, Title 50 U.S.C.A. Appendix. The case was tried by the Court without a jury.

The defendant did not move for a judgment of acquittal at any time. It is assumed however for the purposes of this Opinion that the defendant seeks a judgment of acquittal on the same general grounds as those raised by defendants in similar cases where the registrants are members of the Jehovah's Witnesses sect and, having been classified as conscientious objectors, refused to comply with the order to report to their local board to receive instructions to proceed to the place of their civilian work.

From the defendant's Selective Service file and other legal evidence the following facts and circumstances appear:

The defendant properly filled out his "Classification Questionnaire" and returned it to his local board in August, 1950. Defendant did not state therein that he was a minister or a student preparing for the ministry nor did he state that he, by reason of religious training and belief, was conscientiously opposed to participation in war in any form. On August 28, 1950, defendant was classified I-A by his local board. However, on December 26, 1950 defendant wrote his local board and requested the board to furnish him with a conscientious objector form.

The local board mailed to defendant a "Special Form for Conscientious Objector", which he filled out and returned. Defendant stated therein that, by reason of his religious training and belief, he was conscientiously opposed to participation in war in any form, and that he was further conscientiously opposed to participation in noncombatant training or service in the armed forces. He claimed complete exemption under Section 6(j) of Title I of the Selective Service Act of 1948 [1] as a conscientious objector opposed to participation in both combatant and noncombatant training and service in the armed forces.

On January 12, 1951, the local board classified Steinhart IV-E. This classification gave him complete exemption as a conscientious objector opposed to participation in both combatant and noncombatant training and service in the armed forces. Later the Act was amended, at which time the IV-E classification was abolished and the I-O classification was substituted in its place. The new I-O classification applied to conscientious objectors opposed to both combatant and noncombatant service. On December 10, 1951, Steinhart's local board classified him I-O.

On August 25, 1952 defendant's local board ordered him to report on September 5, 1952 for a physical examination. The defendant reported and was found acceptable and on September 10, 1952 a certificate of acceptability was mailed to him.

In a letter dated October 8, 1952, Steinhart requested his local board to exempt him from military service for the reason that he had become an ordained minister of the gospel, acting under the direction of the Watchtower Bible & Tract Society. Previously when placing claim for exemption, defendant had not "yet been ordained". However, on June 8, 1952, Steinhart was baptized in a ceremony held at the Keystone Junior College at LaPlume, Pennsylvania and because of this defendant claimed that

1. 50 U.S.C.A.Appendix, § 456(j). Its title was changed on June 19, 1951, from "Selective Service Act of 1948" to "Universal Military Training and Service Act". 65 Stat. 75, 50 U.S.C.A.Appendix, § 451(a).

he had become marked as a person bound to preach the gospel. Consequently the registrant claimed he was entitled to a IV–D classification. The defendant reiterated his position in a letter dated November 24, 1952.

The defendant, having been classified I–O and having been found acceptable, was eligible in accordance with the Selective Service Regulations to perform for a period of twenty-four consecutive months such civilian work contributing to the maintenance of the national health, safety, or interest as the local board deemed appropriate. The defendant failed to submit to his local board the types of work he would offer to perform.

On August 11, 1953 the local board decided to continue the defendant's classification as I–O. Since defendant failed to submit three types of work he would be willing to perform, the local board, in a letter dated September 24, 1953, submitted three types of work to defendant, from which he was requested to make a selection or a statement that he would not perform any of them. Defendant sent a statement to the local board on October 3, 1953, in which he asserted he would not perform any of the types of work submitted to him.

After an interview with the registrant on October 6, 1953, the local board decided to continue his classification as I–O.

Since no agreement had been reached between the registrant and the local board as to the type of work the registrant would perform in lieu of induction, it became necessary for the representative of the Pennsylvania Director of Selective Service to arrange a meeting with the local board and the registrant and offer his assistance in reaching an agreement. Such meeting is provided for in the Regulations. After due notice to the registrant, such meeting was held on October 27, 1953, at which appeared in addition to the registrant and others, Major William C. Halfpenny, Jr., representative of the Pennsylvania State Director. At the meeting the defendant related that he would not

be able to come to any agreement, since such an agreement would conflict with his religious convictions. In view of the registrant's refusal to come to an agreement, Major Halfpenny advised that it would be necessary for the local board to select a type of work it deemed appropriate together with a plan of employment, and after obtaining the approval of the Director of Selective Service, the local board could order the registrant to perform such work.

In a letter dated December 4, 1953, the local board apprised Major Halfpenny that it had decided that registrant be ordered to perform work at the Norristown State Hospital and requested the necessary approval of the Director of Selective Service.

On December 30, 1953 the local board met and reviewed registrant's file. The Board advised defendant that since no new evidence was submitted to warrant any change in his classification, he would be continued in classification I–O.

Furthermore, the local board requested that the registrant appear before the local board on April 27, 1954. Again after interrogating the defendant as to his religious activities, the local board decided to continue him in class I–O. On May 11, 1954, after reviewing registrant's file and answers to various questions propounded to him on April 27, 1954, the board determined that there had not been sufficient new evidence offered to warrant any change of classification. The defendant was apprised of such determination on May 12, 1954. No appeal was taken by him.

In a letter dated May 28, 1954 the local board requested that the Director of Selective Service approve registrant's civilian work assignment. Such approval was contained in a letter dated June 23, 1954. Subsequently, the registrant was ordered to report to his local board on July 13, 1954, at which time he would receive instructions to proceed to the place of employment. The defendant failed to report as ordered to receive instructions relative to his civilian work assignment. On July 14, 1954 the local

board informed the Personnel Director of the Norristown State Hospital of such failure.

■ The defendant's only complaint seems to be that there is no support in the record for the classification given him.[2] Since Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Court is bound to make this inquiry, and if there is no basis in fact for the classification, it is the Court's duty to adjudge the defendant not guilty.

■ The Court must, therefore, consider the matter of Steinhart's claim to be classified as a minister of religion and, therefore, exempt from the draft. It is well settled that merely because he belongs to the body known as Jehovah's Witnesses, all of whose members claim to be ministers to preach the gospel to all the nations, he does not thereby become entitled to the ministerial exemption under the statute and regulations. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; United States v. Hagaman, 3 Cir., 213 F.2d 86. The ministerial exemption is a narrow one and is described in the statute. The burden is on the registrant to show that he comes within it.

■ The administrative authorities were justified in finding that Steinhart did not so qualify. It is true that in 1952 he was baptized into the Jehovah's Witnesses and he claims to be a minister. This Court must go further and find whether he was a minister in the statutory sense. In United States v. Hagaman, supra, it was pointed out that the flock cannot consist of shepherds only.

Steinhart was not the company servant. At the time he was ordered to report to the board to receive instructions to proceed to his civilian work assignment, Steinhart was Assistant Company Servant and Theocratic Ministry School Instructor. Defendant became a "pioneer" on September 1, 1954, several months after he failed to report to his local board to receive instructions to proceed to his civilian work assignment. Pioneers, as this Court understands it, are not "company servants" but are a step up in the ranks of the hierarchy from ordinary members. They are obliged to perform a hundred hours a month in the group service. Steinhart stated that he was able to conduct funerals, marriages, and baptisms, but he had never been appointed to perform any. There is evidence, undoubtedly, that Steinhart did engage in some religious activity. A great deal of church work in every denomination is done by persons who devote themselves without compensation. In many denominations laymen frequently make religious talks without thereby achieving in their own or any one's mind any "ministerial status".

This case presents a problem of deciding on which side of the line Steinhart's activities fell. Some circumstances indicate his employment in a ministerial capacity. There were others indicating that he had not reached in the service of the Jehovah's Witnesses employment a ministerial capacity and was a "minister" no matter how that term is used by Jehovah's Witnesses. That being the case, the decision is for the administrative authorities. Estep v. United States, supra.

This Court finds no error in the proceedings and there is a basis in fact for the classification given the defendant by his local board. An appropriate order will be entered herewith finding the defendant guilty as charged.

2. For a full discussion of the authority of a local board to assign a registrant classified I-O to perform civilian work contributing to the national health, safety, or interest, see United States v. Messerman, D.C.1955, 128 F.Supp. 759.