**UNITED STATES of America**
v.
**Robert Vernon MANNS.**
**No. 55 CR 288.**

United States District Court
N. D. Illinois.
Oct. 27, 1955.

raised by the defendant's motion for judgment of acquittal made at the close of the Government's evidence and renewed at the close of all the evidence.

The defendant filed his selective service questionnaire on October 16, 1950, requesting a ministerial classification (IV–D). On November 7, 1950, Local Board 56 classified him I–A, and he requested both a personal appearance before the Board (held on November 21, 1950) and an appeal from its action. On September 13, 1951, Manns took the Armed Forces physical examination and was certified acceptable for service. Also in September 1951, Manns filed the special form for conscientious objectors "since I have not been recognized as a minister." The Local Board affirmed the I–A classification in November 1951, but the Appeal Board, by unanimous vote, on October 8, 1952, reclassified Manns as I–O. There followed negotiations between Manns and Selective Service officials with a view to determining the type of civilian work that would be suitable for Manns to perform in accordance with Section 6(j) of the Act, 50 U.S.C.A. Appendix, § 456(j). Manns declined to specify his preference and in a personal meeting on January 13, 1953, with the members of the Local Board and the representative of the State Director of Selective Service he "definitely refused to agree to any of the work designated for a conscientious objector and stated that he was aware of the consequences." Finally, on June 29, 1953, Manns was sent a written form assigning him to hospital work at Manteno State Hospital, Manteno, Illinois (a mental hospital), and ordering him to report to the local board on July 10 for instructions to proceed to the place of employment. Manns did not report to the Local Board on that date, nor has he at any time reported to the Hospital for his assigned work.

Robert Tieken, U. S. Atty., William T. Hart, Asst. U. S. Atty., Chicago, Ill., for the United States.

Karl M. Milgrom, Chicago, Ill., for defendant.

HOFFMAN, District Judge.

The defendant was indicted under Section 12 of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 462, for failing to perform a duty required by that Act. The indictment charged that on July 10, 1953, the defendant, who was classified 1–O (conscientious objector opposed to both combatant and noncombatant service) was ordered by his Local Board "to report for civilian work contributing to the national health, safety and interest to the Manteno State Hospital" and "did willfully and knowingly neglect, fail and refuse to perform the duty of reporting for and performing such civilian work as ordered by his Local Board". The case was tried to the court without a jury. Both parties have submitted briefs directed to some of the legal questions

■ One of the grounds assigned by the defendant in the written motion for judgment of acquittal was that the denial of his claim for exemption as a minister was arbitrary and without basis

in fact. This point was not argued in the brief, and no facts to support it are called to our attention. The defendant's selective service file and his testimony at the trial reveal that he is a member of Jehovah's Witnesses and was ordained as a minister in 1940 at the age of 10. His religious sincerity is not questioned, as evidenced by his final classification as a conscientious objector. But at the time of his registration he held a full-time job, 40 hours a week, as a warehouseman. He did not hold any one of the official positions in his Unit of the Witnesses which might have entailed additional ministerial responsibilities. He told the hearing officer who heard his selective service appeal that in the period preceding the hearing he devoted about 5 hours a month to his ministry. It is clear that there was a strong basis in fact for the denial to Manns of a ministerial exemption. See United States v. Steinhart, D.C.M.D.Pa.1955, 129 F.Supp. 594.

The defendant contends that the order to perform civilian work at a state mental hospital is invalid because (1) such work is not national work as required by the Act, 50 U.S.C.A. Appendix, § 451 et seq., (2) the Act, if construed to include this work, calls for a private non-federal labor draft in violation of the Thirteenth Amendment, and (3) the Act, if so construed, violates the due process clause of the Fifth Amendment. These arguments have been fully answered on numerous occasions. See the cases collected in United States v. Hoepker, 7 Cir., 1955, 223 F.2d 921.

■ It is contended that the proof fails to establish the offense charged in the indictment. The defendant interprets the indictment as charging him with the offense of failing to report to Manteno State Hospital and to perform civilian work there. The evidence, on the other hand, is said to show only that he failed to report to his Local Board. Since the written order sent to him reads,

"You are ordered to report to the local board named above at 9:30 a. m. on the 10th day of July, 1953, where you will be given instructions to proceed to the place of employment",

the defendant says that he could not have violated a due order to report at Manteno because he never showed up at his Local Board to get such an order. The defendant misreads both the order and the indictment. The duty that arises from the order is apparent from a reading of the document. It is titled, "Order to Report for Civilian Work and Statement of Employer". It tells the defendant that he has been assigned to hospital work at Manteno State Hospital. In addition to the order to report to the Local Board (quoted above), it states:

"You are ordered to report for employment pursuant to the instructions of the local board, to remain in employment for twenty-four (24) consecutive months * * *."

And, finally, the order warns its recipient that

"Failure to report at the hour and on the day named in this order, or to proceed to the place of employment pursuant to instructions or to remain in this employment the specified time will constitute a violation of the Universal Military Training and Service Act * * *."

The duty of performing civilian service does not arise independently after the registrant has reported to the Local Board. The order is composite and requires his attendance at the board (which is simply a procedural step) and his performance of civilian work at the place named in the order. The indictment in this case closely followed the language of the order and charged the defendant with failing "to perform the duty of reporting for and performing such civilian work as ordered by his Local Board". By the defendant's own admission he did not report to the Local Board. A letter from the superintendent of Manteno State Hospital (as well as the defendant's admissions) establishes that he did not go to Manteno to perform the work assigned him. The proof fully meets the charge of the indictment. See Williams v. United States, 9 Cir., 1953, 203 F.2d 85, certiorari denied, 1953, 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408, where the

defendant contended that proof of his failure to report to his Local Board as ordered did not establish the charge of the indictment that he had refused to submit to induction. The court refused to convert an order to report for induction into two distinct orders—one to report to the induction center, and the other to submit to induction. Both duties arose from the same order.

Section 1604.41 of the Selective Service Regulations, in effect at the times material here, provided as follows:

"Advisors to registrants shall be appointed by the Director of Selective Service upon the recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. Every person so appointed should be at least 30 years of age. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office." 30 Code Fed. Regs. § 1604.41.

No advisor was ever appointed for Local Board 56 and of course no names were posted in the Local Board office. Manns was not aware of this regulation until May 1955 when his attorney advised him to check at the board office. He did and saw no names posted. On two previous occasions (November 21, 1950, and January 13, 1953) when he had been at the board office for interviews, he had looked at the bulletin board and does not remember seeing a list of advisors for his board. There were posted, however, the names of advisors for other local boards which shared the same office. The defendant contends that the failure to name advisors and to post their names deprived him of procedural due process.

Both sides have cited decided cases in support of their respective positions. In Chernekoff v. United States, 9 Cir., 1955, 219 F.2d 721, 724, the court, in reversing a conviction under the Act, listed the failure of the Local Board to comply with the posting of names and advisors as "another problem of due process" presented in that case. The defendant had also been denied a summary of the adverse evidence against him; the denial of a conscientious objector's classification was based on improper grounds; and he had not refused to be inducted in the manner required by law. In United States v. Giessel, D.C.D.N.J.1955, 129 F. Supp. 223, the court entered a judgment of acquittal because a combination of circumstances, including the failure to apprise the defendant of his right to advice, operated to deprive him of procedural rights.

In United States v. Dorn, D.C.E.D.Wis. 1954, 121 F.Supp. 171, the defendant, who had failed to appeal the classification which he was now attacking, contended that the failure to appoint an advisory panel was a defect which could not be cured by an appeal. The court disagreed.

"It is undisputed that the Local Board failed to post the names of any such Panel members in the Local Board office. But not every procedural error will render a proceeding vulnerable in a collateral attack. A registrant must show that the proceeding was so unfair as to deprive it of vitality. (Citation.) The defendant has not at any time claimed that he did not know of his right to appeal." 121 F.Supp. at page 178.

The court also pointed out that an appeal agent (provided for by regulations) was at all times available to assist the defendant if he had sought assistance. A second district court, following the Dorn case, also pointed to the availability of other selective service officials, including the appeal agent, to advise registrants. United States v. Sutter, D.C.S.D.Cal. 1955, 127 F.Supp. 109, 119. Similarly, in United States v. Gwaltney, D.C.E.D. Va.1955, unreported, the court said:

"The final attack of the defendants upon the action of the Board is that no 'advisors', as provided in 1604.41 of the regulations of the Selective Service System, were made available to the defendants. Concededly, they nevertheless had abun-

dant sources of advice; for this purpose the Board members as well as the appeal agent were always ready. No desire for advice was evident; for the very beginning each of the defendants emphatically declared to the Board that he would not under any circumstances comply with any order of the Board not recognizing his exemption as a minister."

Finally, the Chernekoff case was specifically distinguished in United States v. Rowton, D.C.W.D.Ky.1955, 130 F.Supp. 189, where the defendant was not shown to have been prejudiced by the failure to appoint advisors.

 The court agrees with Judge Tehan's analysis in United States v. Dorn. The appointment of advisors is not such an inherent element of fair procedure that the failure to appoint and post them automatically invalidates the proceedings. Others were available to advise if help was needed. The selective service classification card which Manns admits having received and read said, "For advice, see your Government appeal agent." Manns never sought advice, and it is clear that none was needed. He successfully prosecuted an appeal as a result of which he obtained the conscientious objector classification which he sought. Even before he had the help of an attorney, he had on his own collected and submitted to the board affidavits, religious literature and a petition in support of his claims. His case was heard fully and fairly. The posting of advisors could not have affected the defendant's situation since, as he admits, he would refuse to perform any kind of civilian work because it would interfere with his preaching.

The defendant's final contention is that the failure to give him a second physical examination after he was classified I–O violated the regulations and deprived him of due process. The defendant's only physical examination took place on September 13, 1951, while he was still classified I–A. His classification was not revised until October 8, 1952. The defendant relies on Section 1660.20 of the regulations, which reads:

"(a) When a registrant in Class I–O is found acceptable for service after his armed forces physical examination * * * he shall, within ten days after notice of acceptability is mailed to him by the local board * * * submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest * * * which he is qualified to do and which he offers to perform in lieu of induction into the armed forces. * * *." 32 Code Fed. Regs. § 1660.20.

 The defendant interprets this regulation to require that the examination be given *after* the registrant is classified I–O. Certain sections of Operations Bulletin No. 70, issued by the Selective Service System on June 19, 1952, are also cited. The defendant's contention has been fully answered in United States v. Thomas, D.C.E.D.Ill.1954, 124 F.Supp. 411, affirmed (without discussion of this point), 7 Cir., 1955, 223 F.2d 921. Like Manns, Thomas' only physical examination was given in 1951 while he was classified I–A; and subsequently he was classified I–O and ordered to report for civilian work in July 1953. The court pointed out that Regulation 1628.-10 required a physical examination before a registrant could be ordered to perform civilian work, but it did not specify when the exam was to be given. While the court in that case did not cite Regulation 1660.20, that section adds nothing to the defendant's argument. It deals with the method for determining what type of civilian work the registrant will perform and cannot be stretched to cover the time for giving the physical examination. The effect of Operations Bulletin No. 70 was considered by the court in the Thomas case and found not to require a re-examination. A refusal to re-examine might in some circumstances result in substantial prejudice. But at no time has Manns questioned the continued validity of the findings of his examination, and he was not prejudiced by a failure to give a second one.

The defendant's motion for a judgment of acquittal is denied. There will be an order finding the defendant guilty with a judgment of conviction on the finding.