**UNITED STATES of America,**
**Plaintiff,**

v.

**Lewis Osborn PHILLIPS, Defendant.**
**No. A-6718.**

United States District Court
N. D. West Virginia,
Wheeling Division.
July 24, 1956.

John R. Morris, U. S. Atty., Clarksburg, W. Va., R. J. Schleuss, Asst. U. S. Atty., Fairmont, W. Va., for plaintiff.

Michael Hahalyak, Pittsburgh, Pa., J. Guy Allender, Grafton, W. Va., for defendant.

BOREMAN, District Judge.

This is a criminal case which arose on an indictment returned by the grand jury for the Northern District of West Virginia on the 6th day of April, 1954. The indictment charged that the defendant, Lewis Osborn Phillips, having been classified by Local Board No. 26, Selective Service System, Randolph County, Elkins, West Virginia, as a conscientious objector and found fit for general service, did knowingly and wilfully fail and neglect to report as a conscientious ob-

jector for work of national importance when notified to do so by order of said Local Board dated April 1, 1953, in violation of Title 50 U.S.C.A.Appendix, § 462(a). The defendant waived trial by jury in writing and requested that his case be heard by the Court without a jury.

Statement of the Case.

Some few months after his original classification in Class I–A under the Selective Service Law, the defendant filled out and sent to the Local Board the special form for conscientious objectors. Local Board No. 26 then classified the defendant in Class IV–E (conscientious objector opposed to both combatant and noncombatant training and service) on June 14, 1949. Defendant did not appeal this classification. Then on December 18, 1950, defendant was reclassified in Class I–A by the Local Board.

On December 26, 1950, defendant, by letter, requested a personal hearing before the Local Board to consider his classification. He did not say at that time what classification he desired. On January 2, 1951, the Local Board held its regular meeting, at which time the defendant appeared and offered information concerning his classification as a conscientious objector, but did not offer any appreciable evidence concerning his status as a minister. His principal objective at that time was to secure the conscientious objector classification. The defendant brought several witnesses with him but the Local Board refused to hear them, feeling that they could offer no information in addition to that which the Board already had. The Board did not consider that the information submitted by the defendant warranted a reclassification to Class IV–E, and refused to so classify him, giving him instructions as to the appeal of his case to the Appeal Board. No summary of the oral evidence given at the hearing was made and put in the defendant's file.

Defendant then took his physical examination on January 23, 1951, and was found acceptable. He appealed his I–A classification to the Appeal Board, stating that he conscientiously objected to being inducted. He did not charge the Local Board with any improper conduct. The Appeal Board sustained his I–A classification. The Department of Justice, after a hearing, recommended that defendant be classified in Class IV–E. The Examiner's report indicates that was the only classification for which the defendant appealed, and he admits that is true. On July 31, 1951, defendant was reclassified in Class IV–E.

From that date until January 1953, the defendant made no complaints to the Board, apparently being satisfied with his classification and claiming no other. On October 30, 1951, pursuant to 1951 amendments, defendant's classification was changed to I–O (conscientious objector available for civilian work contributing to the maintenance of the national health, safety or interest). Defendant did not appeal his change of classification. He filled out the special SSS Form No. 152 which was mailed to him, and made no complaints and claimed no other classification until January of 1953, when defendant stated that he would refuse to perform any civilian work which might be assigned to him because he was a minister. And he consistently refused to perform such work thereafter. Throughout this period of time, neither did he claim to be, nor offer evidence that he was, a minister of religion.

On April 1, 1953, defendant was ordered to report to the Local Board on April 13, 1953, for assignment to work at the Weston State Hospital, which is an institution constructed, operated and maintained by the State of West Virginia for the mentally ill, located at Weston, West Virginia. The defendant failed to report as ordered.

At the conclusion of the taking of testimony at the trial, the defendant filed his written motion for judgment of acquittal, assigning as grounds therefor that the Government had failed to prove defendant's guilt beyond a reasonable

doubt; that he was arbitrarily denied procedural due process; that he was arbitrarily denied a full and fair hearing before the Local Board; that the Local Board arbitrarily refused to receive and to consider any additional information which defendant sought to present to the Local Board; that the Local Board arbitrarily failed to make an adequate memorandum after the alleged hearing before it, and failed to lodge in defendant's file a summary of the proceedings; that the Board applied an improper standard in determining whether registrant was a minister and arbitrarily refused to grant him the lowest classification from the evidence given before it; that the Local Board arbitrarily refused to reopen defendant's case or to consider his entitlement or claim to a ministerial classification; that the Local Board erroneously advised defendant of his rights under the law to his prejudice; that the Local Board failed to post the names of. advisors and to afford the defendant an opportunity to consult them; that the Local Board arbitrarily refused or failed to classify defendant anew after his alleged personal appearance before it on January 2, 1951; that the Local Board was arbitrary and prejudiced against the defendant; that the defendant had been subject to a prior conviction.

### Discussion and Conclusions.

█ Defendant contends that he was denied a full and fair hearing before the Local Board on January 2, 1951. It is admitted by him that he did appear before the Board in the Board room. It is merely a question of how long he was there and what happened while he was there. Defendant contends that he was before the Board only for about five minutes; that, in effect, the Board told him the matter was out of their hands and that all the defendant could do would be to take his physical examination and then appeal his classification. Defendant says that he wanted to call to the attention of the Board certain information concerning his status as a minister, and that he wanted to inquire whether he might claim a ministerial as well as a conscientious objector's classification, but that the Board refused to hear him. He is corroborated by one witness, the father of another defendant in the same type of case as the present one. On the other hand, Phil Goldman, Secretary of the Local Board, testified that the defendant appeared before the Board for about fifteen minutes; that he had full and free opportunity to, and did, disclose fully whatever information he may have had to present to the Board; that the classification the defendant was trying to get was IV–E; that he was not at that time claiming any ministerial classification; that the only evidence offered by the defendant that he was a minister was his own statement to that effect and a card from the Watchtower Bible and Tract Society; that the Board heard him fully and considered his evidence but did not feel that it warranted his reclassification from I–A to IV–E, and certainly not to IV–D, minister; that the Board told him that fact and instructed him on how to conduct an appeal. The Court is of the opinion that the defendant, Phillips, did. get a full and fair hearing before the Local Board, as Mr. Goldman's testimony indicates.

█ There are quite a few inconsistencies in defendant's position. His first claim that he was denied a fair hearing was in court. At no time did he bring any such charge against the Local Board in his subsequent correspondence with the Board, or in any other manner. It is well established that a selective service registrant, who believes that he has been rendered subject to military service by an erroneous classification or arbitrary action of his Local Board, must exhaust all administrative remedies before his claim may be heard in the courts. United States v. Dorn, and cases cited therein, D.C., 121 F.Supp. 171; Williams v. United States, 9 Cir., 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408. He claims the Board did not hear him at all, yet Jehovah's Witnesses' literature which

he presented to the Board at that time is in his SSS file. He claims he wanted to present information to the Board concerning his status as a minister. Mr. Goldman testified that defendant did offer a little evidence of that status, but only incidentally to his claim to being a conscientious objector, and certainly it was not sufficient to warrant his classification as a minister. He admits that the only classification for which he appealed to the Appeal Board was that of a conscientious objector. It is reasonable to believe that IV–E was the classification sought from the Local Board. Further evidence of this is the fact that when he finally was given that classification, upon recommendation of the Department of Justice, he was apparently satisfied. After that he did not claim that he was a minister, though he had more than a little correspondence with the Local Board.

■ Therefore, it seems apparent to the Court that defendant, throughout, was concerned only with obtaining and maintaining a conscientious objector classification, never seriously offering any material evidence of his claimed ministerial status, and that he was accorded a full and fair hearing before the Local Board on January 2, 1951. There is no indication whatever, except defendant's own questionable testimony, that the Board refused to receive and consider any evidence or information he had to offer which might have had a bearing on his classification. True, the Board refused to hear the witnesses that defendant had brought with him to testify, but it is well settled that such a hearing before the Local Board is not a trial in any sense, but merely an informal proceeding. Rase v. United States, 6 Cir., 129 F.2d 204; Seele v. United States, 8 Cir., 133 F.2d 1015. The Local Board is not a court required to swear witnesses or allow representation by counsel. Harris v. Ross, 5 Cir., 146 F.2d 355. In the present case, there is little to indicate that defendant's witnesses could have presented any material information to the Board concerning defendant's status that the Board did not already possess. Besides, Regulation 1624.1 provides that only the registrant has the right to appear before the Board. Whether any others shall also be permitted to appear rests in the discretion of the Board.

■ Defendant charges that the Board arbitrarily failed to make a summary of the proceedings before it and to make the same a part of his file. Regulation 1624.2(b) provided that the registrant might present such "additional information" to the Board as he believed would assist the Board in determining his proper classification, and " * * *. Such information shall be in writing, or, if oral, shall be summarized in writing and, in either event, shall be placed in the registrant's file". In the present case no such summary was made. However, the cases are clear that if the registrant presents no "*additional*" (emphasis added) information, that is, if the oral information is, for all practical purposes, the same as written evidence already in his file, then the failure to summarize the oral information in writing and place it in the file is not unlawful and such failure does not deprive the registrant of a fair hearing on appeal or result in an invalidity of classification. Niznik v. United States, 6 Cir., 173 F.2d 328, certiorari denied 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; Dickinson v. United States, 9 Cir., 203 F.2d 336, reversed on another ground 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Cramer v. France, 9 Cir., 148 F.2d 801; United States v. Mansavage, 7 Cir., 178 F.2d 812; Ory v. United States, 5 Cir., 206 F.2d 500; United States v. Edmiston, D.C., 118 F.Supp. 238; United States v. Wider, D.C., 119 F.Supp. 676. Thus the Board does not have to make such a summary in any case unless the registrant furnishes new or additional information, that is, information not otherwise available to the Board in the registrant's file. And whether the registrant furnished such additional informa-

tion is a question of fact to be determined by the trier of facts. Defendant claims, of course, that he offered no information at all because the Board refused to hear him. The Board claims that he offered information only concerning his status as a conscientious objector, which information was fully available to the Board in the various completed forms and questionnaires, correspondence and the like, and all included in his file. The evidence clearly indicates to the Court that, at his hearing on January 2, 1951, defendant did not furnish the Board with any new or additional material information concerning his status which the Board did not already possess in defendant's file. Therefore, it was not a denial of due process for the Board to fail to make such a summary and to include it in defendant's file. It is not shown that the defendant was injured or prejudiced thereby since, on appeal, he got the IV–E classification, which was admittedly the only classification for which he appealed.

Defendant also charges that the Local Board applied an improper standard in determining whether he was a minister and arbitrarily refused to grant him the lowest classification from the evidence given before it. This contention seems also to be without merit. The only indication of the application of any improper standard was in the testimony of Mr. Goldman, Secretary of the Local Board. Upon cross-examination, he tried to distinguish between "regular" ministers and Jehovah's Witnesses, saying that a "regular" minister "has to go through college, and so forth * * *". But he did not say, however, that that was one of the standards applied to the defendant's case. In fact, Mr. Goldman later said he was being confused and that the fact that the defendant had not gone to college was not one of the reasons for the Board's deeming the defendant not a minister; that "each case is to be judged on its own basis"; that the reason the Board felt defendant was not entitled to a minister's classification was because the only evidence he presented of that status was a card from the Watchtower Bible and Tract Society, certain Jehovah's Witnesses' literature, and his own statement that he was a minister. In addition, the fact that the defendant devoted as much time to a secular employment as he did to religious work was taken into consideration by the Board in denying defendant a minister's classification. In view of the information and evidence presented to the Board by the defendant, and under the circumstances of the case, it could hardly be said that the Board applied an arbitrary standard, or that it wrongfully failed to give him the lowest classification to which he was entitled. Certainly the evidence is quite sufficient to show that the Board had some reasonable basis in fact for denying him the ministerial classification.

As the Supreme Court of the United States pointed out in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 154, 98 L.Ed. 132, a ministerial classification will not be given a member of a particular sect merely because it is the belief that all members of the sect are ministers; that while " 'regular or duly ordained minister' ", within the Regulations, does not preclude all secular employment, preaching or teaching the principles of one's sect part-time or half-time, occasionally or irregularly, is not sufficient to bring one within the ministerial classification. Title 50 U.S.C.A. Appendix, § 466, provides that " 'regular or duly ordained minister of religion' " includes only those who, as their regular and customary vocation, preach and teach the principles of religion. The Court in the Dickinson case stated: "The ministerial exemption * * * 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' " The burden is on the claimant to prove himself to be within the group entitled to the ministerial classification. United States v. Simmons, 7 Cir., 213 F.2d 901; United States v. Blankenship, D.C., 127 F.Supp. 760. It was the opinion of the Board,

and it is the opinion of this Court, that the defendant failed to sustain that burden. Furthermore, the evidence shows that the defendant was not even claiming a ministerial classification at that time. Since he offered no convincing evidence that he was a minister, the Court cannot say that the Board failed to give him the lowest classification to which he was entitled. Even admitting that the Board applied an improper standard, there was ample evidence, or lack of evidence, to warrant its refusal to classify him as a minister. Besides, the defendant did not appeal the Board's failure to so classify him, by his own admission, nor did he appeal his subsequent classification in Class I–O. Therefore, he failed to exhaust his administrative remedies and cannot now be heard to complain before the courts. United States v. Dorn, and Williams v. United States, supra.

In view of these facts, it cannot be said, as defendant contends, that the Board acted arbitrarily in refusing to reopen defendant's case or consider his entitlement or claim to a ministerial classification. As previously pointed out, there was ample evidence, or lack of evidence, to warrant the Board's refusal to so classify him. His occupation was always listed as a secular one; he spent as many hours in his secular occupation as he did in his religious work; the only evidence he ever offered as to his ministerial status was his own statement that he was a minister, a card from the Watchtower Bible and Tract Society, and certain Jehovah's Witnesses' literature. This evidence he presented only once in a period of some four years; the rest of the time he said nothing about being a minister. Thus it would seem quite clear that the Board had some basis in fact for refusing to classify him as a minister. And the law is now clear that if there is any basis in fact for the Board's classification, or its refusal to give a registrant a certain classification, then the decision of the Board is final even though the Court or a jury might have decided differently on the facts.

Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

Defendant contends that the Local Board erroneously advised him of his rights to his prejudice. He contends that the Board told him the only thing he could do would be to take his physical examination and then appeal his classification, which he did. Whether such advice was erroneous or not, the Court does not believe that the defendant was prejudiced thereby. He did appeal his classification, which was the only thing he could do anyway, and he did get the classification for which he appealed. That he took his physical examination first could not have prejudiced or injured him for he had to take that sooner or later.

Defendant next urges as prejudicial the failure of the Local Board to post the names of advisors to registrants. Even though that list may not have been posted, yet it has not been shown that the defendant was prejudiced thereby. In United States v. Manns, D.C., 135 F.Supp. 624, 628, the Court held: "The appointment of advisors is not such an inherent element of fair procedure that the failure to appoint and post them automatically invalidates the proceedings." In United States v. Dorn, D.C., 121 F.Supp. 171, at page 178, the Court said: "Not every procedural error will render a proceeding vulnerable in a collateral attack. A registrant must show that the proceeding was so unfair as to deprive it of vitality." The Court further said, and it is equally applicable to the present case, "The defendant has not at any time claimed that he did not know of his right to appeal. He was in fact advised of his right to appeal in the notice of classification form which was sent to him on two separate occasions following classification by the Board. Furthermore, he is conclusively presumed to know the law." McLenigan v. Grymes, D.C., 59 F.Supp. 846, 847. The defendant followed all the procedures available to him in an effort to

obtain and maintain his IV–E classification, except that he did not appeal his I–O classification. He appealed from the Local Board to the Appeal Board and his case was investigated by the Department of Justice. Is it reasonable to believe that advisors could have supplied him with any aid or information that he did not get from the Boards, or would not have obtained if he had inquired? Upon appeal of his I–A classification, he apparently got just what he wanted. Defendant contends that advisors would have informed him whether he was entitled to claim both IV–D and IV–E classifications at the same time. But so would the Local Board if he had made inquiry. Apparently he did not. Besides, "The posting of advisors could not have affected the defendant's situation since, as he admits, he would refuse to perform any kind of civilian work because it would interfere with his preaching." United States v. Manns, supra.

Defendant claims that the Local Board failed to classify him anew after his personal hearing on January 2, 1951. At that time defendant was in Class I–A and the Board refused to change that classification and notified defendant of that fact at the time. So he knew what his classification was and knew that it had not been changed. It would appear to have been unnecessary to send him another classification card continuing him in the very same classification, and it certainly could not have been prejudicial to him not to have done so since he knew all the facts. In United States v. Zieber, 3 Cir., 161 F.2d 90, at page 92, the Court said, "If Zieber furnished no *new* [emphasis added] information the Board was not required to classify him again." Even so, the minutes of the Board affirmatively show that after the hearing on January 2, 1951, the Board did mail to defendant SSS Form No. 110, the classification card. That contention, therefore, would seem to be without merit.

Defendant next urges that the Board was arbitrary and prejudiced against the defendant. A close examination of the record and the evidence fails to disclose to the Court that the Board acted in an arbitrary manner toward the defendant, or that it was prejudiced against the defendant, in particular, or against Jehovah's Witnesses, in general. At no time until he came into court did the defendant make any such charge of arbitrariness or prejudice against the Local Board. Therefore, he cannot be heard to complain here for the first time. United States v. Dorn, and Williams v. United States, supra.

Lastly, defendant pleads prior conviction. It is true that defendant had previously been tried and convicted of a quite similar violation of the Selective Service Act, a failure to report for induction, in July of 1946, for which he was sentenced to imprisonment. However, that was a quite separate and distinct violation of the Act from the one with which he is charged here. Therefore, it should go without saying that a conviction under the Act is no bar to a prosecution for a subsequent violation of the Act. United States v. Palmer, 3 Cir., 223 F.2d 893, certiorari denied October 24, 1955, 350 U.S. 873, 76 S.Ct. 116.

Consequently, the Court finds that the defendant was not denied procedural due process in any respect, and that the Government has proved his guilt beyond a reasonable doubt.

It is the opinion of the Court that the defendant's motion for judgment of acquittal must be denied, and the Court finds the defendant guilty as charged in the indictment.

The foregoing will be adopted as containing the Court's findings of fact and conclusions of law.