**UNITED STATES of America,
Plaintiff,**

v.

**Carl Vane MILLER, Defendant.**

**No. A–6716.**

United States District Court
N. D. West Virginia, at Wheeling.
July 24, 1956.

John R. Morris, U. S. Atty., Clarksburg, W. Va., R. J. Schleuss, Asst. U. S. Atty., Fairmont, W. Va., for plaintiff.

Michael Hahalyak, Pittsburgh, Pa., J. Guy Allender, Grafton, W. Va., for defendant.

BOREMAN, District Judge.

This case arose on an indictment returned by the grand jury for the Northern District of West Virginia on the 6th day of April, 1954. The indictment charged that the defendant, Carl Vane Miller, having been classified by Local Board No. 26, Selective Service System, Randolph County, Elkins, West Virginia, as a conscientious objector and found fit for general service, did knowingly and wilfully fail and neglect to report as a conscientious objector for work of national importance when notified to do so by order of said Local Board dated April 15, 1953, in violation of Title 50, U.S.C.A. Appendix, § 462(a). The defendant waived trial by jury in writing and requested that his case be heard by the Court without a jury.

### Statement of the Case

About nine months after his original classification in Class I-A under the Selective Service Law, the defendant claimed to be a conscientious objector and filled out and sent to the Local Board the special form for conscientious objectors. Local Board No. 26 classified the defendant in Class IV-E (conscientious objector opposed to both combatant and noncombatant training and service) on June 14, 1949. Defendant did not appeal this classification. On December 18, 1950, defendant was reclassified in Class I-A by the Local Board.

On December 26, 1950, defendant, by letter, requested a personal hearing before the Local Board concerning his classification of I-A. He did not say at that time what classification he desired. On January 2, 1951, the Local Board had its regular meeting, at which time the defendant appeared and offered evidence and argument concerning his classification as a conscientious objector, but did not offer any information concerning his status as a minister. Several witnesses were brought with defendant but the Local Board refused to hear them, feeling that they could offer no additional information to what the Board already had. The Local Board did not consider that the information submitted by the defendant warranted a reclassification to Class IV-E, refused to so reclassify him, and gave instructions concerning appeal of his case to the Appeal Board. Defendant contends that he was denied this hearing.

Defendant took his physical examination on January 23, 1951, and was found acceptable. He then appealed his I-A classification to the Appeal Board, stating that he conscientiously objected to being inducted. He did not charge the Local Board with any improper conduct. The Appeal Board sustained his I-A classification. The Department of Justice, after a hearing, recommended that defendant be classified in Class IV-E. The examiner's report indicates that is the only classification for which defendant appealed. On June 12, 1951, defendant was reclassified in Class IV-E.

Pursuant to 1951 amendments, defendant's classification was changed to I-O (conscientious objector available for ci-

vilian work contributing to the maintenance of the national health, safety or interest) on October 30, 1951, but due to some oversight the special SSS Form No. 152 was not mailed to defendant until November 10, 1952.

On November 21, 1952, defendant returned the form personally to the Local Board not filled out, and made a signed statement to the Clerk that he was a minister and should be given a ministerial classification. This was the first time that defendant ever claimed to be a minister or offered any evidence of his alleged ministerial status. The Board felt that the evidence offered was not sufficient to warrant his classification as IV–D, Minister, and refused to so classify him.

From this time defendant steadfastly refused to agree to accept any civilian work which might be assigned to him as a conscientious objector, but he did not at any time appeal his I–O classification. Defendant was ordered to report to the Local Board on April 27, 1953, for assignment to work at the Weston State Hospital, which is an institution constructed, operated and maintained by the State of West Virginia for the mentally ill, located at Weston, West Virginia. Defendant reported to the Board as ordered, but told the Board that he refused to accept any civilian employment, insisting that he be classified as a minister.

At the conclusion of taking of testimony, the defendant filed his written motion for judgment of acquittal, assigning as grounds therefor that the Government failed to prove defendant's guilt beyond a reasonable doubt; that defendant was denied procedural due process in several particulars, namely, that he was arbitrarily denied a personal hearing before the Local Board; that he was arbitrarily denied a full and fair hearing before the Local Board; that the Local Board arbitrarily refused to receive and consider any additional information which defendant sought to present to the Board; that the Board arbitrarily refused to make an adequate memorandum or written summarization of the proceedings before it on January 2, 1951, and to make it part of the file; that the Local Board failed to classify defendant anew after his alleged personal appearance before it; that the Local Board failed to post the names of advisors and to afford defendant an opportunity to consult them; that the Local Board arbitrarily refused to reopen defendant's case or to consider his entitlement or claim to a ministerial classification; that the Local Board erroneously advised defendant of his rights to his prejudice; and that the Local Board was arbitrary and prejudiced against the defendant.

### Discussion and Conclusions

Defendant argues that he was denied any hearing before the Local Board on January 2, 1951, though he was present at the time designated by the Board. There appears a marked conflict in the testimony on this point. The minutes of the Local Board show: "Jan. 2, 1951. Registrant appeared before Local Board No. 26 to appeal from classification. Local Board gave instructions on procedure for further appeal, but did not reopen classification". Then the defendant's file shows a letter written by him to the Local Board and received by it on January 10, 1951, saying that he appeared on January 2, 1951, at the time set by the Board, and was not heard as required by law, and requesting that the Board set another date for such appearance and hear him. As for the testimony in the case, both Virginia Simons, Clerk of the Local Board, and Phil Goldman, Secretary of the Board, apparently the only disinterested witnesses in the case, testified positively that the defendant did appear before the Board, that he had full and free opportunity to and did present his evidence and arguments before the Board concerning his desired reclassification, that after hearing him the Board was of the opinion the information offered by him did not justify a reclassification, and that he was instructed in detail how he should conduct an appeal to the Appeal Board. Goldman testified that the defendant was given ten to fifteen minutes before the Board and spoke his mind ful-

ly, but that he was cut off when he went to great lengths quoting from the Bible and Jehovah's Witnesses' literature. He remembers the defendant especially because he and Lewis Phillips, defendant in another case, were the first Jehovah's Witnesses with whom the Board had been concerned since its reactivation. The occasion was also more readily recalled because of the extremely bad weather of the night. Goldman is also sure that the information defendant presented to the Board concerned only his status as a conscientious objector, that defendant offered no information concerning his status as a minister and laid no claim to such status. Defendant, however, claims that he was denied admission to the Board room altogether; that he never was heard at all; that Goldman merely said that the Board did not have time to fool with Jehovah's Witnesses and that all defendant could do would be to appeal. Defendant claims he wanted to present information to the Board concerning his status as a minister and to inquire whether he could claim both a conscientious objector's and a minister's classification. Defendant is corroborated in his testimony by two other witnesses, his father and Phillips. All of these witnesses obviously had a definite interest in the outcome of the case and there seem to be quite a few inconsistencies in the defendant's position. He claims that the Board said it did not have time to fool with Jehovah's Witnesses, yet it had just previously heard Phillips, a known Jehovah's Witness, that same night. He testified he did not know whether he was entitled to claim both a IV–E (conscientious objector) and a IV–D (minister) classification, and it is not explained when or how he realized otherwise. He claimed he wanted to present information concerning his status as a minister, yet it is interesting to note that, even if true, he waited until he had been reclassified from IV–E to I–A to do so, a period of one year and six months from the time he was classified as IV–E. It is only reasonable to assume that if he honestly believed he was a minister

and entitled to that classification, he would have presented information to that effect and claimed that status at least sometime during the time he was classified IV–E, without waiting until he lost that classification. Rather it seems apparent to the Court that defendant was concerned only with maintaining his status as IV–E. As long as he had that classification he was content, but as soon as he was again classified I–A in December of 1950, then it was that he requested a hearing before the Local Board. Further evidence of his apparent satisfaction with his classification IV–E is the fact that after he finally got it back on June 12, 1951, the Board did not hear from him again until November 21, 1952, and then only after his IV–E classification had been changed to I–O. And Mr. Goldman testified that at the hearing, defendant sought only to be reclassified back to IV–E. Besides, defendant's file does not show any indication whatever that defendant either claimed, or presented any information concerning, his status as a minister prior to November 21, 1952, over four years from the date he was first classified in September 1948. And when he, in 1952, did lay claim to being a minister, no effort was spared on the part of the authorities to arrive at a just disposition of his case. The Board felt that the information offered by defendant was not sufficient to warrant his classification as a minister. Is it reasonable to believe that the Board was arbitrary in 1951 but not in 1952?

 Defendant's letter of January 10, 1951, to the Local Board is not inconsistent with the fact that he was given a hearing before the Local Board on January 2, 1951. Defendant states he was not heard "*as required by law*" (emphasis added) and concludes, "Yours for a *fair deal*". Apparently, since he was not permitted to quote all he wanted to from the Bible and from Witness literature, since the witnesses he brought with him were not heard, and because the Board refused to change his classification, defendant felt that he had been deprived of a *full* and *fair* hearing, and wanted an-

718

other hearing so that he could take all the time he wanted. Manifestly this would have been most impracticable and would, under the circumstances, have served no useful purpose. Apparently the information he desired to present was not new and different information from that which the Board already had and, in that case, the Board had every right to limit the defendant as to time. 1624.2(b), Selective Service Regulations, provides: " * * * The member or members of the local board before whom the registrant appears may impose such limitations upon the time which the registrant may have for his appearance as they deem necessary". As for the refusal to permit his witnesses to go before the Board, the Board had a right to do that also. Such a hearing is not a trial in any sense, but merely an informal proceeding. Rase v. United States, 6 Cir., 129 F.2d 204; Seele v. United States, 8 Cir., 133 F.2d 1015. The Local Board is not a court required to swear witnesses, or allow representation by counsel. Harris v. Ross, 5 Cir., 146 F.2d 355. In the present case, there is little to indicate that defendant's witnesses could have presented any material information to the Board concerning defendant's status in addition to that which the Board then had in its files. Regulation 1624.1 provides that only the registrant has the right to appear before the Board. Whether any others shall also be permitted to appear rests in the discretion of the Board. It would appear that defendant was not deprived of any essential right in that respect. The Court can only conclude that defendant did have a full and fair hearing before the Local Board, that he had opportunity to and did present his information to the Board, and that the Board did not deny him due process by refusing to hear and consider any material information he had to offer.

Defendant contends that he was denied due process in that the Local Board failed to make a summary of the proceedings before it and to make the same a part of his file. Regulation 1624.2 (b) provides: " * * * Such infor-

mation (at the hearing) shall be in writing, or, if oral, shall be summarized in writing and, in either event, shall be placed in the registrant's file". In the present case there was no such summary made. However, the cases are clear that if the registrant offers no *new, further* or *additional* information as provided by Regulation 1624.2(b), and if the oral information is, for all practical purposes, the same as written evidence already in the file, then the failure of the Local Board to summarize the oral information in writing and place it in the file is not unlawful and such failure does not deprive the registrant of a fair hearing on appeal or result in an invalidity of classification. Niznik v. United States, 6 Cir., 173 F.2d 328, certiorari denied 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733; Dickinson v. United States, 9 Cir., 203 F.2d 336, reversed on another ground, 346 U. S. 389, 74 S.Ct. 152, 98 L.Ed. 792; Cramer v. France, 9 Cir., 148 F.2d 801; United States v. Mansavage, 7 Cir., 178 F.2d 812; Ory v. United States, 5 Cir., 206 F.2d 500; United States v. Zieber, 3 Cir., 161 F.2d 90, certiorari denied 333 U.S. 827, 68 S.Ct. 454, 92 L.Ed. 1112; United States v. Edmiston, D.C., 118 F.Supp. 238; United States v. Wider, D.C., 119 F. Supp. 676. Thus the Board does not have to make such a summary in any case unless the registrant furnishes new or additional information, that is, information not otherwise available in the registrant's file. Whether or not the registrant furnished this additional information is a question of fact to be determined by the trier of facts. Accordingly, the evidence indicates, and it is found as a fact by the Court, that at his hearing on January 2, 1951, defendant did not furnish the Board with any new or additional information concerning his status which the Board did not already possess in defendant's file. Therefore, it was not a denial of due process for the Board to fail to make such a summary in writing of the oral evidence. It is not shown that defendant was injured or prejudiced thereby in any case since, on appeal, he got the IV–E classification for which he was

appealing, according to the record. Besides, on appeal he did not charge any sort of misconduct against the Local Board, and thus cannot be heard to complain. It is well established by numerous decisions that a selective service registrant, who believes that he has been rendered subject to military service by an erroneous classification or arbitrary action of his Local Board, must exhaust all administrative remedies before his claim may be heard in the courts. United States v. Dorn and cases cited therein, D.C., 121 F.Supp. 171; Williams v. United States, 9 Cir., 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408.

 Defendant objects because the Board failed to classify him anew after his personal hearing on January 2, 1951. He was then classified in Class I–A and the Board refused to alter that classification, notifying the defendant of that fact at the time. So he knew what his classification was, and it would appear that it would have been unnecessary to send him another classification card continuing him in the very same classification. The Board's failure to do so could not have been prejudicial since he knew all the facts anyway. However, the minutes of the Local Board affirmatively show that after the hearing on January 2, 1951, the Board did mail to defendant SSS Form No. 110, the classification card. The defendant's contention, therefore, would appear to be without merit. In United States v. Zieber, 3 Cir., 161 F.2d 90, 92, the Court said, "If Zieber furnished no *new* [emphasis added] information the Board was not required to classify him again."

Defendant next complains that the Local Board failed to post conspicuously the names of advisors to registrants and to afford defendant an opportunity to consult them. Even though such list may not have been posted, yet it is not shown that defendant was prejudiced thereby. In United States v. Manns, D.C., 135 F.Supp. 624, 628, the Court cited United States v. Dorn, supra, and held: "The appointment of advisors is not such an inherent element of fair procedure that the failure to appoint and post them automatically invalidates the proceedings."

 The defendant followed the procedures available to him in an effort to obtain and maintain his IV–E classification (although he did not appeal his I–O classification). He appealed from the Local Board to the Appeal Board and the Department of Justice made the requisite investigation. Is it reasonable to believe that advisors could have supplied him with any aid or information that he did not get from the Local and Appeal Boards, or would not have obtained if he had inquired? Besides, upon appeal of his I–A classification, he got the classification for which he appealed. Defendant says advisors would have told him whether he was entitled to claim both IV–E and IV–D classifications at the same time. But then so would the Local Board or the Appeal Board if he had made inquiries. Apparently he did not. Furthermore, "The posting of advisors could not have affected the defendant's situation since, as he admits, he would refuse to perform any kind of civilian work because it would interfere with his preaching." United States v. Manns, supra.

Defendant contends that the Board arbitrarily refused to reopen his case or to consider his entitlement or claim to a ministerial classification. It will be noted that the first time, according to the record, the defendant ever laid claim to being a minister, or offered evidence to that effect, was on November 21, 1952, four years after he had been first classified, and then only after his IV–E classification had been changed to I–O. If defendant had honestly and conscientiously thought himself entitled to a minister's classification, is it not reasonable to assume that he would have offered evidence of that status long before this, and especially in view of the fact that he stated that he considered himself a minister since 1938 or 1939? Up until November of 1952, defendant's sole efforts had been directed toward the claim of conscientious objector classification. Sud-

denly he claimed that he was a minister. But the record shows that the Board did not refuse him any opportunity to present his information to the effect that he was a minister. It merely felt that the information was insufficient to warrant his classification as a minister, and thus refused to reopen his case.

▆▆▆▆ The cases illustrated by Estep v. United States, 327 U.S. 114, 66 S. Ct. 423, 90 L.Ed. 567, and Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L. Ed. 59, make it clear that if there is any basis in fact for the Board's classification, or its refusal to put a registrant in a certain classification, the decision of the Board is final even though the court or a jury might have decided differently on the facts. And the present case shows quite clearly that there was a basis in fact for the Board's refusal to classify the defendant as IV–D when he finally did lay claim to it. As pointed out before, at no time until November 21, 1952, did defendant offer any evidence at all that he was a minister. On his Classification Questionnaire, Series VI—Minister, or Student Preparing for the Ministry—was left completely blank. His occupation was always listed as a secular one, and he stated on his questionnaire that he expected to continue indefinitely at it. He testified that he worked an average of twenty-five hours per week in secular employment and devoted about twenty-five to thirty hours per week to his ministerial activities. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 154, 98 L.Ed. 132, points out that a ministerial classification will not be given to a member of a particular sect merely because it is the belief that all members of the sect are ministers; that while " 'regular or duly ordained minister' ", within the Regulations, does not preclude all secular employment, preaching or teaching the principles of one's sect part-time or half-time, occasionally or irregularly, is not sufficient to bring one within the ministerial classification. Title 50 U.S.C.A. Appendix, § 466, provides that " 'regular or duly ordained minister of religion' " includes only those who, *as their regular*

*and customary vocation,* preach and teach the principles of religion. The Supreme Court of the United States, in the Dickinson case, stated: "The ministerial exemption *. * * 'is a narrow one, intended for the leaders of the various religious faiths and not for the members generally.' " The burden is on the claimant to prove himself to be within the group entitled to the ministerial classification. United States v. Simmons, 7 Cir., 213 F.2d 901; United States v. Blankenship, D.C., 127 F.Supp. 760. It was the opinion of the Board, and it is the opinion of this Court, that the defendant, Miller, has not sustained that burden of proof. Under the facts of this case, the Court finds that there was a basis in fact for the Board's refusal to classify defendant as a minister and that the Board did not act arbitrarily in refusing to so classify him. The defendant did not appeal this refusal to so classify him, nor did he appeal his I–O classification, and thus he did not exhaust his administrative remedies under the law, which he must do before his claim may be heard in the courts. United States v. Dorn, and Williams v. United States, supra.

▆▆▆▆ Defendant then argues that the Board erroneously advised him to his prejudice, contending that when the Board allegedly denied him his hearing, it told him that the only thing he could do would be to take his physical examination and then appeal his classification, which he did. Whether such advice was erroneous or not, the Court fails to see that the defendant was prejudiced thereby. He did appeal, which was the only thing he could do anyway, and he did get the IV–E classification for which he appealed. That he took his physical examination first could not have prejudiced him in any way.

▆▆▆▆ Lastly, the defendant charges that the Board was arbitrary and prejudiced against him. A close examination of the record and the evidence fails to disclose to the Court that the Board acted arbitrarily toward the defendant, or that it was prejudiced particularly against

him or generally against Jehovah's Witnesses.

Consequently, the Court finds and holds that the defendant was not denied procedural due process in any particular, and that the Government has proved his guilt beyond a reasonable doubt.

Therefore, the Court is of the opinion that the defendant's motion for judgment of acquittal must be denied, and the Court finds the defendant guilty as charged in the indictment.

The foregoing will be adopted as containing the Court's findings of fact and conclusions of law.